# No. 13-4480

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

―――――――――――――――

XUEDAN WANG, on Behalf of Herself and All Others Similarly Situated,
ELIZABETH MANCINI, MATTHEW JORDAN WAGSTER, STEPHANIE
LAUREN SKORKA, ERIN E. SPENCER, ALEXANDRA RAPPAPORT,
SARAH WHEELS, CAITLIN LESZUK,

*Plaintiffs-Appellants,*

JESSICA ANN BEST, PAUL VANCE, COURTNEY HOLT, JANET E.
GLAZIER, REBECCA E. DIXON, ERIN D. SULLIVAN, CARLY ROCKWELL,
DANA LYNN VOGEL,

*Plaintiffs,*

v.

THE HEARST CORPORATION,

*Defendant-Appellee.*

―――――――――――――――

On Appeal from the United States District Court
for the Southern District of New York

―――――――――――――――

BRIEF FOR THE SECRETARY OF LABOR AS *AMICUS CURIAE*
IN SUPPORT OF PLAINTIFFS-APPELLANTS

―――――――――――――――

M. PATRICIA SMITH
  Solicitor of Labor
JENNIFER S. BRAND
  Associate Solicitor
PAUL L. FRIEDEN
  Counsel for Appellate Litigation
MARIA VAN BUREN
  Senior Attorney
U.S. Department of Labor
Office of the Solicitor, Room N-2716
200 Constitution Avenue, NW
Washington, DC 20210
(202) 693-5555

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF INTEREST OF THE SECRETARY OF LABOR ................... 1

STATEMENT OF THE ISSUE .............................................................. 2

STATEMENT OF THE CASE .............................................................. 3

      A.    Statement of Facts and Course of Proceedings.................................. 3

SUMMARY OF ARGUMENT ............................................................ 7

ARGUMENT ................................................................................. 9

      THIS COURT SHOULD DEFER TO THE DEPARTMENT'S
      LONGSTANDING SIX-PART TRAINEE TEST, WHICH
      IS DERIVED FROM AND FINDS SUPPORT IN *PORTLAND*
      *TERMINAL,* AND ACCURATELY MEASURES EMPLOY-
      MENT STATUS IN A TRAINEE OR INTERNSHIP SETTING ............... 9

CONCLUSION ............................................................................... 29

CERTIFICATE OF COMPLIANCE ................................................... 30

CERTIFICATE OF SERVICE AND ECF COMPLIANCE............................... 31

## TABLE OF AUTHORITIES

Page

Cases:

*Archie v. Grand Cent. P'ship, Inc.*,
   997 F. Supp. 504 (S.D.N.Y. 1998)........................................14, 17, 27

*Atkins v. Gen. Motors Corp.*,
   701 F.2d 1124 (5th Cir. 1983)........................................................... 21

*Barfield v. N.Y. City Health & Hosps. Corp.*,
   537 F.3d 132 (2d Cir. 2008)............................................................8, 20

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
   450 U.S. 728 (1981)......................................................................... 15

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008)............................................................9, 15

*Donovan v. Am. Airlines, Inc.*,
   686 F.2d 267 (5th Cir. 1982)............................................................ 21

*Fed. Express Corp. v. Holowecki*,
   552 U.S. 389 (2008)......................................................................... 20

*Glatt v. Fox Searchlight Pictures, Inc.*,
   293 F.R.D. 516 (S.D.N.Y. 2013)...................................................26, 28

*Glatt v. Fox Searchlight Pictures, Inc.*.
   No. 11-cv-6784 (S.D.N.Y. Sept. 17, 2013) ........................................ 7

*Herman v. RSR Sec. Servs. Ltd.*,
   172 F.3d 132 (2d Cir. 1999)............................................................. 9

*Kaplan v. Code Blue Billing & Coding, Inc.*,
   504 Fed. App'x 831 (11th Cir. 2013)....................................21, 22, 23

*Marshall v. Baptist Hosp., Inc.*,
   668 F.2d 234 (6th Cir. 1981)......................................................16, 18

Page

Cases--continued:

*McLaughlin v. Ensley*,
    877 F.2d 1207 (4th Cir. 1989)......................................................16, 23

*Reich v. Parker Fire Prot. Dist.*,
    992 F.2d 1023 (10th Cir. 1993)................................. 12, 13, 23, 24, 25

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)...................................................................20, 22

*Solis v. Laurelbrook Sanitarium & Sch., Inc.*,
    642 F.3d 518 (6th Cir. 2011)..................................... 12, 23, 24, 26, 28

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
    471 U.S. 290 (1985)........................................................................ 10

*U.S. v. Rosenwasser*,
    323 U.S. 360 (1945).......................................................................2, 9

*Velez v. Sanchez*,
    693 F.3d 308 (2d Cir. 2012)........................................................... 27

*Walling v. Portland Terminal Co.*,
    330 U.S. 149 (1947)..................................................................*passim*

*Wang v. Hearst Corp.,*
    293 F.R.D. 489 (S.D.N.Y. 2013)................................................*passim*

*Wang v. Hearst Corp.,*
    No. 12-cv-793 (S.D.N.Y. June 27, 2013) .................................. 6-7, 27

Statutes:

Fair Labor Standards Act of 1938, as amended,
    29 U.S.C. 201 *et seq.*:

    29 U.S.C. 203(e)(1)........................................................................... 9
    29 U.S.C. 203(e)(4)(A) .................................................................. 10

iii

Page

Statutes--continued:

      29 U.S.C. 203(g) ........................................................................ 9

      29 U.S.C. 204(a) ........................................................................ 1

      29 U.S.C. 204(b) ........................................................................ 1

      29 U.S.C. 214(a) ................................................................. 11, 24

      29 U.S.C. 216(c) ........................................................................ 1

      29 U.S.C. 217 ............................................................................. 1

    28 U.S.C. 1292(b) ....................................................................... 6

Regulation and Rules:

    29 C.F.R. 553.101 ..................................................................... 10

    Eleventh Circuit Rule 36-2 ........................................................ 21

    Federal Rules of Appellate Procedure:

      Rule 29 ........................................................................................ 1

      Rule 29(c)(5) ............................................................................ 30

      Rule 29(d) ................................................................................ 30

      Rule 32(a)(5) ............................................................................ 30

      Rule 32(a)(6) ............................................................................ 30

      Rule 32(a)(7)(B) ...................................................................... 30

      Rule 32(a)(7)(C) ...................................................................... 30

    Second Circuit Rule 31.2 .......................................................... 31

Other Authorities:

    Steven Greenhouse, *The Unpaid Intern, Legal or Not*,
      N.Y. Times (Apr. 2, 2010) ..................................................... 15

    Ross Perlin, Intern Nation: How to Earn Nothing and
      Learn Little in the Brave New Economy (Verso 2011) .................... 14

Page

Other Authorities--continued:

U.S. Dep't of Labor, Wage & Hour Div., Fact Sheet #71,
    *Internship Programs Under the Fair Labor*
    *Standards Act* (Apr. 2010), available at
    http://www.dol.gov/whd/regs/compliance/whdfs71.pdf ............. *passim*

U.S. Dep't of Labor, Wage & Hour Div., Field Operations
    Handbook, Ch. 10 (1993), available at
    http://www.dol.gov/whd/FOH/FOH_Ch10.pdf .................................. 2

    ¶10b11 ...................................................................................2, 15
    ¶10b11(b) ..................................................................... 12, 13, 20
    ¶10b11(b)(1) ................................................................... 15
    ¶10b11(b)(2) ................................................................... 16
    ¶10b11(b)(3) ................................................................... 17
    ¶10b11(b)(4) ................................................................... 18
    ¶10b11(b)(5) ................................................................... 19
    ¶10b11(b)(6) ................................................................... 19

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letters (FLSA):

    1975 WL 40999 (Oct. 7, 1975) ........................................ 13
    1986 WL 1171130 (Mar. 27, 1986).................................. 13
    1988 WL 1534561 (Jan. 29, 1988).................................. 18
    1994 WL 1004761 (Mar. 25, 1994).................................. 18
    1995 WL 1032473 (Mar. 13, 1995).................................. 19
    1998 WL 1147717 (Aug. 11, 1998) ................................. 13
    2002 WL 32406598 (Sept. 5, 2002)............................13, 19
    2006 WL 1094598 (Apr. 6, 2006)...............................13, 16

David C. Yamada, *The Employment Law Rights of Student Interns*,
    35 Conn. L. Rev. 215 (2002)............................................ 14

<u>BRIEF FOR THE SECRETARY OF LABOR AS *AMICUS CURIAE*</u>
<u>IN SUPPORT OF PLAINTIFFS-APPELLANTS</u>

Pursuant to Federal Rule of Appellate Procedure 29, the Secretary of Labor

("Secretary") submits this brief as *amicus curiae* in support of plaintiffs-appellants.

The district court erred when it concluded that application of a totality of the

circumstances test, rather than the Department of Labor's ("DOL" or

"Department") six-part test for determining whether a trainee or intern is an

employee for purposes of the Fair Labor Standards Act ("FLSA" or "Act"), is the

proper method for ascertaining employment status.  Instead of utilizing the

Department's longstanding, objective test, the district court adopted a more

subjective "totality of the circumstances" test that necessarily makes it more

difficult for both employers and interns, as well as courts, to determine whether

interns are employees entitled to the protections of the FLSA.

<u>STATEMENT OF INTEREST OF THE SECRETARY OF LABOR</u>

The Secretary, who is responsible for the administration and enforcement of

the FLSA, *see* 29 U.S.C. 204(a) and (b), 216(c), 217, has compelling reasons to

participate as *amicus curiae* in this appeal in support of the plaintiff-appellant

interns, because the determination of whether an intern is an employee covered by

the FLSA's minimum wage and overtime compensation guarantees, rather than a

trainee who is not entitled to those protections, is critical to the enforcement of the

FLSA.  The Department's six-part test, which is based on the Supreme Court's

opinion in *Walling v. Portland Terminal Co.*, 330 U.S. 149 (1947), provides a

consistent, comprehensive, and objective standard for measuring employment not

only in this case, where former interns of the Hearst Corporation ("Hearst") allege

that they were employees of the company and therefore entitled to minimum wage

and overtime compensation under the FLSA, but in other cases involving interns

and trainees.

## STATEMENT OF THE ISSUE

The FLSA's definition of an "employee" has been recognized almost from

the Act's inception as one of the "broadest definition[s] that has ever been included

in any one act." *U.S. v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (internal

quotation marks and citation omitted). In *Portland Terminal*, however, the

Supreme Court concluded that the FLSA's definition of "employee" does not

include within its scope an individual who, *inter alia*, works "for [his or her] own

advantage on the premises of another" and "without any express or implied

compensation agreement." 330 U.S. at 152. The Department subsequently

enunciated a six-part test, based on that decision, which it applies to determine

whether trainees or interns are employees under the FLSA. *See* Wage & Hour

Div., Field Operations Handbook ("FOH"), Ch. 10, ¶10b11 (1993), available at

http://www.dol.gov/whd/FOH/FOH_Ch10.pdf. The issue presented by this case is

whether this longstanding *Portland Terminal* test for determining whether a trainee

2

or intern is an employee for purposes of the FLSA is the proper test to apply in these "intern" cases, rather than a "totality of the circumstances" or "primary benefit" test.

## STATEMENT OF THE CASE

A.  Statement of Facts and Course of Proceedings

   1.  This case is a putative class action brought by a number of interns who worked in unpaid internships at 20 different magazines owned by Hearst and who alleged that they were employees under the FLSA and New York Labor Law. *Wang v. Hearst Corp.*, 293 F.R.D. 489 (S.D.N.Y. 2013).  In 2008, Hearst started an initiative to curtail expenses, which included a directive to staff at two magazines to use interns rather than paid messengers in order to save money.  *Id.* at 491.  That same year, the publisher downsized by 229 employees; three magazines closed, eliminating all of those jobs, and other mid- and entry-level jobs were eliminated.  *Id.*  Hearst engaged over 3,000 interns from 2007 to 2013.  *Id.*

   The internships typically lasted a minimum of three months, and most interns worked three to five days a week for at least eight hours a day.  *Hearst*, 293 F.R.D. at 491.  The interns' duties varied depending on the department to which they were assigned.  *Id.*  Plaintiff Xuedan Wang, for example, worked for *Harper's Bazaar* magazine for five months in its accessories department, working five days a week and sometimes working from 9:00 a.m. until 8:00 p.m.  *Id.*  Wang's duties

3

included creating story boards, cataloging samples, maintaining the accessories closet, and doing online research.  *Id.*  Wang also served as a contact between editors and public relations representatives.  *Id.*  Plaintiff Erin Spencer interned at *Cosmopolitan* magazine as a bookings intern for approximately three months, and worked four days a week for about eight hours a day.  *Id.*  Spencer spent her internship organizing files, holding casting calls, assisting at photo shoots, running errands, coordinating certain mailings, updating contact lists, and working in the fashion closet.  *Id.*  Opt-in plaintiff Matthew Wagner worked as an intern in *Esquire* magazine's publishing department for six months.  *Id.*  Wagner worked three days a week for nine hours a day, running errands, updating event guest lists, and preparing for and staffing events.  *Id.*

Some of the Hearst magazines' internships had elements of a formal educational program.  *See Hearst*, 293 F.R.D. at 492 (some internships offered access to "Cosmo-U" sessions that focused on *Cosmopolitan* editors' career paths; one intern took a "Media Math" class).  All of the plaintiffs understood prior to the commencement of the internship that they would not be paid, and Hearst made it clear that there was no realistic chance of a permanent job at the end of the internships.  *Id.*  The parties do not dispute that some of the duties performed by interns had been performed and were being performed by paid employees.  *Id.*  The parties do dispute the level of supervision provided to the interns, the benefit

4

received by the interns, and the advantage Hearst received from the interns' work. *Id.*

2. The district court commenced its analysis by examining *Portland Terminal*, which the parties and the district court agreed "provide[d], for the most part, the governing case law," and the Department's Intern Fact Sheet ("Fact Sheet" or "I.F.S."), which applies the Department's six-factor *Portland Terminal* test to internships. *Hearst*, 293 F.R.D. at 492-93 (citing U.S. Dep't of Labor, Wage & Hour Div., Fact Sheet #71, *Internship Programs Under the Fair Labor Standards Act* (April 2010), available at http://www.dol.gov/whd/regs/compliance/whdfs71.pdf).[1]  The plaintiffs argued that the interns' employment should be analyzed under an "immediate advantage" standard, wherein an employment relationship would be established if the employer obtained "a direct or immediate benefit" from the interns' work. *Id.* at 493.  The plaintiffs argued in the alternative that the district court should utilize the

---

[1] The Department's Intern Fact Sheet emphasizes that the Act's broad definition of "employee" necessitates that exceptions from employee status be narrowly construed, and provides specific examples of situations that commonly arise in the intern setting.  I.F.S., p. 2.  It also explains how the factors in the six-part test, applied to "all of the facts and circumstances" of each internship program, can help to distinguish interns who are trainees and therefore not covered by the Act from interns who are employees entitled to the FLSA's protections.  *Id.*  The Fact Sheet does not make any substantive changes to the six-part test articulated in the FOH; it applies the six *Portland Terminal* factors to an internship rather than a training program.

5

Department's six-part *Portland Terminal* test.  *Id.*  Hearst argued that the court

should utilize a "balancing of the benefits" test, which it suggested would consider

the totality of the circumstances in measuring the economic reality of the

relationship.  *Id.*

      The district court agreed with Hearst that *Portland Terminal* "looked to the

totality of the circumstances of the training program to determine whether the

plaintiffs were 'employees' under the FLSA."  *Hearst*, 293 F.R.D. at 493.  The

district court rejected plaintiffs' argument that *Portland Terminal* established a

"direct or immediate benefit" test, stating that "[t]here is no one-dimensional test;

rather, the prevailing view is the totality of circumstances test."  *Id.* (citations

omitted).  It also stated that the Department's six-part test should not be

"disregarded," but rather should be considered as "a framework of an analysis of

the employee-employer relationship," noting that other courts in the Southern

District of New York have extended *Skidmore* deference to the Department's test.

*Id.* at 493-94 (citations omitted).  The district court denied plaintiffs' motion for

partial summary judgment on the employment issue on the ground that,

irrespective of the test that should be applied, the case presented a genuine dispute

as to material facts under either test.  *Id.* at 494.

      3.  Plaintiffs moved to certify the court's Opinion and Order for immediate

appeal pursuant to 28 U.S.C. 1292(b), which the district court granted.  *Wang v.*

6

*Hearst Corp.*, No. 12-cv-793 (S.D.N.Y. June 27, 2013).  In an Order dated

November 26, 2013, this Court granted the plaintiffs-appellants' petition for

interlocutory appeal, which included the question whether "the district court

err[ed] in holding that a totality of the circumstances test in which a key

consideration is which party benefitted more from the internship should be used to

evaluate Plaintiffs' claims that they are employees under the FLSA and the [New

York Labor Law]?" and stated that it would consider the appeal in tandem with

another case arising from the Southern District of New York that identified almost

the identical issue for interlocutory appeal.  Order at 2, ECF No. 3; *see Glatt v. Fox

Searchlight Pictures*, No. 11-cv-6784 (S.D.N.Y. Sept. 17, 2013).

## SUMMARY OF ARGUMENT

The Department's longstanding six-part *Portland Terminal* test is the best

method for determining employment status under the FLSA in a trainee or

internship setting for several reasons.  As an initial matter, the Department's test is

derived from and finds support in the Supreme Court's *Portland Terminal*

decision, which acknowledged that an individual "whose work serves only his own

interest" can under certain limited circumstances be outside of the scope of the

FLSA's definition of employment.  *See* 330 U.S. at 152.  Because the

Department's test is based on the factors present in the *Portland Terminal* decision,

it accurately outlines the very narrow parameters of this so-called trainee exception

7

to the FLSA's expansive coverage.  The test also encompasses the relevant criteria – the educational nature of the training, benefit to the intern or trainee, the level of supervision provided, displacement of current employees, advantage to the employer, impediment to an employer's business operations, entitlement of a job upon completion of the training, and expectation of wages for training – that inform whether a trainee or intern is an employee for purposes of the FLSA, and thus most accurately captures the economic reality of the relationship.  *See, e.g., Barfield v. New York Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008).  This test will be dispositive in the vast majority of cases, and should be strictly applied absent unusual circumstances.

As applied to the facts and circumstances of each particular trainee or internship program, the Department's *Portland Terminal* test is an objective means of measuring employment status because the analysis is conducted within the confines of the six factors.  The Department developed its six-part test not only to give effect to the *Portland Terminal* decision, but to ensure that the agency applies a consistent standard across the country.  The trainee test helps employers to know their legal obligations to trainees and interns, and assists trainees and interns, who oftentimes are new entrants into the workforce, to understand their legal rights under the Act.  In this way, the Department's test stands in stark contrast to a

8

"totality of the circumstances" or "primary benefit" test, which would introduce

subjectivity into the analysis and invite inconsistent results.

ARGUMENT

THIS COURT SHOULD DEFER TO THE DEPARTMENT'S
LONGSTANDING SIX-PART TRAINEE TEST, WHICH IS DERIVED
FROM AND FINDS SUPPORT IN *PORTLAND TERMINAL*, AND
ACCURATELY MEASURES EMPLOYMENT STATUS IN A TRAINEE
OR INTERNSHIP SETTING

1. The FLSA defines the term "employee" as "any individual employed by

an employer."  29 U.S.C. 203(e)(1).  In turn, "employ" is defined as "to suffer or

permit to work," 29 U.S.C. 203(g).  The Supreme Court therefore recognized that

the term "'employee' had been given the broadest definition that has ever been

included in any one act."  *Rosenwasser*, 323 U.S. at 363 n.3 (internal quotation

marks and citation omitted).  Likewise, this Court has stated that the FLSA's

"remedial nature" warrants the "expansive interpretation" of its statutory

provisions.  *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999)

(internal quotation marks and citations omitted); *see Chao v. Gotham Registry,*

*Inc.*, 514 F.3d 280, 285 (2d Cir. 2008) (Supreme Court has interpreted FLSA

"liberally and afforded its protections exceptionally broad coverage.") (citations

omitted).

2.  In most instances, individuals who work for a for-profit entity are

considered employees under the FLSA and entitled to its protections unless they

9

are subject to a specific statutory exemption or exclusion.[2]   The Supreme Court's

decision in *Portland Terminal*, however, recognized that individuals who

participate in unpaid internships or training programs conducted by for-profit

entities may not be "employed" within the meaning of the FLSA if certain criteria

are met.  In *Portland Terminal*, the railroad offered prospective brakemen the

opportunity to take a hands-on training course, which typically lasted seven to

eight days.  330 U.S. at 149.  Brakemen trainees were "turned over to a yard crew"

from whom they learned the job of a brakeman first by "observation[,]" and then

by performing the tasks "under close scrutiny."  *Id.*  Because they were closely

supervised, the trainees did not displace any of the regular employees.  *Id.* at 149-

50.  Nor did their work expedite the railroad's business; at times, it actually

impeded it because the regular employees had to monitor the trainees in addition to

performing their normal duties.  *Id.* at 150.  Although the training was mandatory

for an individual to be considered for employment with the railroad, trainees were

not guaranteed a job upon completion of the training.  *Id.*  The trainees did not

receive compensation during their training period and did not expect

---

[2] As the Intern Fact Sheet notes, "[i]nternships in the 'for-profit' private sector will
most often be viewed as employment" unless the trainee test is met.  I.F.S., p.1.
Generally, the FLSA does not permit individuals to volunteer their services to for-
profit businesses unless they meet the trainee test discussed herein.  Different rules
apply to individuals who volunteer or perform unpaid internships in the public
sector or for non-profit charitable organizations.  *See* I.F.S., p.2; *see generally* 29
U.S.C. 203(e)(4)(A); 29 C.F.R. 553.101; *Tony & Susan Alamo Found. v. Sec'y of
Labor*, 471 U.S. 290, 298 (1985).

10

compensation, other than a retroactive $4.00 per day allowance, contingent upon their having been accepted and available for work as brakemen, which was negotiated between the railroad and the union for the "war period."  *Id*.

In considering whether the railroad trainees were "employees" for purposes of the FLSA, the Supreme Court noted the expansive nature of that term as defined in the Act.  *Portland Terminal*, 330 U.S. at 150-51 (citation omitted).  The Court observed that trainees, apprentices, and learners can be covered by the FLSA if they are actually employed to work.  *Id.* at 151 (citing 29 U.S.C. 214(a)).  On the other hand, the Court noted, the Act's definitions of "employ" and "employee" are not so broad that they cover individuals who "without any express or implied compensation agreement, might work *for their own advantage* on the premises of another."  *Id.* at 152 (emphasis added).  The Court further observed that the Act was not intended to make an individual "*whose work serves only his own interest* an employee of another person who gives him aid and instruction."  *Id.* (emphasis added).  To this point, the Court noted that the Act would not apply to the railroad trainees if they had taken the railroad training program at a school "wholly disassociated from the railroad" instead of on the worksite.  *Id.* at 152-53.  Accordingly, based on the "unchallenged findings . . . that the railroads received no 'immediate advantage' from any work done by the trainees," the Supreme Court

11

held that the trainees were not employees within the meaning of the FLSA, and

therefore were not entitled to be paid the minimum wage.  *Id.* at 153.

3.  The Department has identified six criteria, distilled from *Portland*

*Terminal*, to determine whether a trainee is an "employee" for purposes of the

FLSA.  *See* FOH ¶10b11(b); *see also Reich v. Parker Fire Prot. Dist.*, 992 F.2d

1023, 1026 (10th Cir. 1993) (DOL's six factor test was "derived almost directly

from *Portland Terminal*"); *compare Solis v. Laurelbrook Sanitarium & Sch., Inc.,*

642 F.3d 518, 526 n.2 (6th Cir. 2011).  These criteria are:

> (1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school;

> (2) the training is for the benefit of the trainees or students;

> (3) the trainees or students do not displace regular employees, but work under their close observation;

> (4) the employer that provides the training derives no immediate advantages from the activities of the trainees or students; and on occasion his operations may actually be impeded;

> (5) the trainees or students are not necessarily entitled to a job at the conclusion of the training period; and

> (6) the employer and the trainees or students understand that the trainees or students are not entitled to wages for the time spent in training.

FOH ¶10b11(b).  The Department's longstanding position is that the narrow

"trainee" exception from the Act's broad definition of an "employee" is established

12

when all six criteria apply. *Id.*; *see* U.S. Dep't of Labor, Wage & Hour Div.,

Opinion Letter ("Op.Ltr.") 2006 WL 1094598 (Apr. 6, 2006); Op.Ltr., 2002 WL

32406598 (Sept. 5, 2002); Op.Ltr., 1998 WL 1147717 (Aug. 11, 1998); Op.Ltr.,

1986 WL 1171130  (Mar. 27, 1986); Op.Ltr., 1975 WL 40999 (Oct. 7, 1975);

*Parker Fire*, 992 F.2d at 1027 (DOL six-part trainee test has been in use since at

least 1967).  The FOH also states that whether all six criteria are satisfied in a

particular case depends "upon all of the circumstances surrounding their activities

on the premises of the employer."  FOH ¶10b11(b); *see* Op.Ltr., 1975 WL 40999

(Oct. 7, 1975).

As discussed *supra*, *Portland Terminal* analyzed the brief, targeted training

offered by the railroad to individuals who wished to become railroad brakemen and

noted that similar training might be obtained through a vocational school; that

trainees did not displace any of the regular employees; that the trainees' work did

not benefit the railroad's business because, in addition to their normal duties, the

regular employees had to closely supervise the trainees; that trainees did not

receive compensation during their training period other than a retroactive $4.00 per

day allowance, contingent upon their having been accepted and available for work

as brakemen; that the trainees were not guaranteed a job at the completion of the

training; and, based on the "unchallenged findings," that the railroads did not

receive an advantage from the trainees' work.  330 U.S. at 149-53.  The

13

Department's test is therefore a faithful application of the Supreme Court's decision in *Portland Terminal*. *See Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 532-33 (S.D.N.Y. 1998) (Sotomayor, J.) (Department test requires findings that are nearly identical to those considered in *Portland Terminal*).

    4. *Portland Terminal* demonstrates that the circumstances under which individuals who participate in employer-sponsored training programs are not covered employees for purposes of the FLSA are quite limited. The *Portland Terminal* criteria are also applicable to unpaid internships, which have proliferated over the past few decades, and which take many forms across vastly different sectors of the economy. *See, e.g.*, I.F.S.; Ross Perlin, Intern Nation: How to Earn Nothing and Learn Little in the Brave New Economy 28, 30-36, 89 (Verso 2011); David C. Yamada, *The Employment Law Rights of Student Interns*, 35 Conn. L. Rev. 215, 217 (2002). The facts of this case illustrate that even within the Hearst organization, magazine interns perform very different tasks; while one intern was tasked with managing the fashion closet, for example, another intern conducted interviews and researched and wrote articles. *Hearst*, 293 F.R.D. at 491-92. Given the rapid expansion of unpaid internships across various sectors of the economy and the varied nature of those internships, it is important for the uniform enforcement of the FLSA to have an objective test to measure interns' employment status.

The Department's six-part test accurately measures the very narrow trainee exception to FLSA coverage against the "circumstances surrounding [an intern's] activities on the premises of the employer."  FOH ¶10b11.  It ensures that internships are uniformly analyzed by employers, interns, and courts across the country to determine whether interns are essentially engaged in the sort of training described in *Portland Terminal* that serves only their own interest, or are performing the sort of routine, productive work for which they are entitled to compensation under the FLSA.  *Id.*  The Department's test is also an important backstop to ensure that this very limited trainee exception to the FLSA's broad coverage is not unduly expanded, particularly in difficult economic times when employers are eliminating paid staff positions and the promise of free labor is both tempting and available.  *See, e.g., Hearst*, 293 F.R.D. at 491; *see also* Steven Greenhouse, *The Unpaid Intern, Legal or Not*, N.Y. Times, Apr. 2, 2010.[3]

5.  An analysis of the individual factors demonstrates the importance of each factor to the overall determination of whether an employment relationship exists. The first *Portland Terminal* factor asks whether "the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school."  FOH ¶10b11(b)(1); *see* I.F.S., p.1.  The

---

[3] An intern who is entitled to compensation under the FLSA cannot waive that right.  *See, e.g., Gotham*, 514 F. 3d at 290 (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (FLSA rights cannot be waived)).

Department has observed that this factor is usually met when the training

incorporates the practical application of material taught in a classroom.  *See*

Op.Ltr., 2006 WL 1094598 (Apr. 6, 2006).  The Fact Sheet also notes that an

internship focused on the performance of the organization's specific operations is

less likely to be considered training than an internship that teaches skills and

content applicable to many different employment settings.  *See* I.F.S., p.2.  In

*Marshall v. Baptist Hospital, Inc.*, for example, the Sixth Circuit concluded that the

hospital's x-ray technician program was educationally deficient in part because the

students performed "clerical chores long after the educational value of that work

was over."  668 F.2d 234, 236 (6th Cir. 1981).  And in *McLaughlin v. Ensley*, the

Fourth Circuit found it significant that prospective employees were taught only

simple job functions related to the business, and thus were provided only a "limited

and narrow kind[] of learning" that did not match the level of instruction that

would be provided to students in a vocational course on outside sales.  877 F.2d

1207, 1210 (4th Cir. 1989).  Thus, an educational component that will serve the

trainee or intern beyond the confines of the particular workplace in which she finds

herself is critical.

The second *Portland Terminal* factor examines whether "the training is for

the benefit of the trainees or students."  FOH ¶10b11(b)(2); *see* I.F.S., p.1.  The

Fact Sheet makes clear that although almost all interns will derive some basic

16

benefits from the internship, such as learning new skills or work habits, such benefits are insufficient to meet the second factor of the *Portland Terminal* test if the intern is engaged in the employer's operations or is otherwise performing productive work. *See* I.F.S., p.2. The Fact Sheet also explains that this factor considers whether the business is dependent upon the work of the intern, which happens when the intern performs the routine work of the business on a regular basis. *Id.* Thus, in *Archie*, the district court stated that while it was not disregarding the immense benefit that formerly homeless and unemployed individuals derived from the on-the-job training, including basic job skills and an employment history, that benefit was outweighed by the fact that the defendant was able to meet its contractual obligations because of the productive work performed by its trainees. 997 F. Supp. at 534-35.

The third *Portland Terminal* factor measures whether "the trainees or students do not displace regular employees, but work under their close observation." FOH ¶10b11(b)(3); *see* I.F.S., p.1. The Fact Sheet explains that in order to determine whether the interns displace regular employees the organization should consider whether it "would have hired additional employees or required existing staff to work additional hours had the interns not performed the work." I.F.S., p.2. An internship where the intern shadows the employer's regular employees, who in turn exercise close supervision over the intern, is more likely to

17

meet this factor.  *Id.*; *see* Op.Ltr., 1988 WL 1534561 (Jan. 29, 1988) (law firm had

"substantial supervisory responsibilities" to its unlicensed law clerk externs).  A

program that provides interns with the same level of supervision as the rest of the

workforce, on the other hand, suggests an employment relationship rather than an

education or training environment.  *See* I.F.S., p.2.  In *Baptist Hospital*, for

example, interns "became functioning members" of the institution, "performing all

duties required of them in a fashion that displaced regular employees." 668 F.2d at

236 (internal quotation marks and citations omitted).  In *Baptist Hospital*, evidence

that trainees performed work alone or under supervision of fellow trainees also

prompted the court to conclude that the training program was "seriously deficient"

in supervision.  *Id.*

The fourth *Portland Terminal* factor measures whether "the employer that

provides the training derives no immediate advantages from the activities of the

trainees or students; and on occasion operations may actually be impeded."  FOH

¶10b11(b)(4); *see* I.F.S., p.1.  The Department has stated that this factor was not

met when interns' work directly contributed toward the daily operations of a youth

hostel, thus providing the employer with an immediate advantage from that labor.

*See* Op.Ltr., 1994 WL 1004761 (Mar. 25, 1994).  The Department has also

observed, however, that minimal productive work by the intern can be offset by the

burden assumed by the employer in providing training and supervision.  *See*

Op.Ltr., 2002 WL 32406598 (Sept. 5, 2002); *see also* Op.Ltr., 1995 WL 1032473 (Mar. 13, 1995).

The fifth *Portland Terminal* factor measures whether "the trainees or students are not necessarily entitled to a job at the conclusion of the training period." FOH ¶10b11(b)(5); *see* I.F.S., p.1. As a safeguard against blurring the line between trainees and employees, the Fact Sheet notes that the internship should not be used as a trial period for permanent employment, and should be for a fixed, rather than an open-ended, period of time. *See* I.F.S., p.2; *see also Portland Terminal*, 330 U.S. at 152. Relatedly, the last *Portland Terminal* factor measures whether "the employer and the trainees or students understand that the trainees or students are not entitled to wages for the time spent in training." FOH ¶10b11(b)(6); *see* I.F.S., p.1. As *Portland Terminal* recognizes, trainees are covered by the FLSA when they are employed for compensation. *See* 330 U.S. at 151.

In sum, the Department's comprehensive six-factor test allows employers, interns, and adjudicators to determine in an objective manner whether there is an employment relationship as broadly defined by the FLSA, thus best reflecting the

economic reality of the situation.  It should therefore be adhered to strictly absent unusual circumstances.[4]

6.  As the agency charged with administering the FLSA, the Department's interpretation of the Act's definition of "employee," as reflected in its FOH, Fact Sheet, Opinion Letters, and this amicus brief, is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (deference for EEOC's statutory interpretation embodied in policy statements contained in compliance manual and internal directives); *Barfield*, 537 F.3d at 149.

The Department's six-factor test is entitled to *Skidmore* deference for several reasons.  First, it is consistent with the criteria discussed in *Portland Terminal,* and thus accurately captures the very limited "trainee" exception to the FLSA's definition of employment recognized in that decision.  Second, the test contains objective criteria that can be applied to a variety of different training environments, including internships.  Third, because the test requires all six factors to be met, it gauges the relevant circumstances presented by any one particular training or internship program and thus captures all indicia of an employment relationship.  *See* FOH, ¶10b11(b).  These criteria, which can be applied to evaluate each internship—to determine its educational nature; benefit to intern; displacement and

---

[4] There do not appear to be any unusual circumstances here that would justify deviating from the Department's test.  *See Hearst*, 293 F.R.D. at 490-92.

20

supervision; advantage to employer; entitlement to a job; and pay—are just as relevant to determining employment status under the FLSA today as they were in *Portland Terminal*.  Indeed, the six-part test, through the requisite meeting of every criterion, best reflects the reality of whether an employment relationship exists or does not exist in the overwhelming majority of cases.

7.  Indeed, two circuit courts have deferred to the Department's six-factor *Portland Terminal* test.  *See Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1128 (5th Cir. 1983); *Kaplan v. Code Blue Billing & Coding, Inc.*, 504 Fed. App'x 831, 834-35 (11th Cir. 2013);[5] *see also Donovan v. Am. Airlines, Inc.*, 686 F.2d 267, 273 n.7 (5th Cir. 1982) (applying six-factor test).  *Atkins* addressed whether participants in a training program that was conducted under the auspices of a training institute but was specifically designed to teach individuals how to work on a General Motors ("G.M.") assembly line were G.M. employees under the FLSA. The court, ruling for G.M., relied on the Department's six-part test in its analysis of this issue, stating that the test, which helps to apply the broad statutory definition of "employee" in the training context, was entitled to "substantial deference."  701 F.2d at 1127-28 (citing *Am. Airlines*, 686 F.2d at 267).

---

[5] Eleventh Circuit Rule 36-2 states that although unpublished opinions are not binding precedent, they may be cited as persuasive authority.

21

In *Kaplan*, the Eleventh Circuit concluded that the analysis of externs'
employment relationship with medical billing companies required an examination
of the economic realities of the relationship, measuring whether the externs' work
"confer[red] an economic benefit on the entity for whom they are working."  504
Fed. App'x at 834 (citation omitted).  Utilizing this analysis, the court concluded
that the externs were not employees under the FLSA because they received
academic credit for their work and fulfilled a prerequisite for graduation as a result
of the program; received substantial supervision; and caused the companies to run
less efficiently, thus resulting in those companies receiving little if any economic
benefit from the externs' work.  *Id.*  The Eleventh Circuit observed that its
conclusion was also supported through the application of the Department's six-
factor *Portland Terminal* test, which the court stated was an interpretation of the
Act that, while not controlling, was something that the courts could look to for
guidance.  *Id.* at 834-35 (citing, *inter alia*, *Skidmore*, 323 U.S. 134).  The court
concluded that the externs were trainees under the Department's *Portland
Terminal* test because their programs satisfied all six factors: the training was
similar to that given in a school and was related to the externs' educational
program; the training benefitted the interns because they received academic credit
and satisfied a condition for graduation; the externs were closely supervised and
did not displace regular employees; the company did not derive any immediate

22

benefit from the externs' work and at times its work was impeded because of the

efforts taken to train and supervise the externs; and the externs understood that

they were not entitled to a job at the completion of the externship and that they

would not be paid for their work.  *Id.* at 835.[6]

8.  Several courts have declined to give *Skidmore* deference to the

Department's test on the ground that its requirement that all six factors be met is

overly rigid.  In *Laurelbrook*, for example, the Sixth Circuit acknowledged that the

Department's six factor test "resemble[s]" the facts presented by *Portland*

*Terminal*, but concluded that "the Court gave no indication that such facts must be

---

[6] The Tenth Circuit has utilized a totality of circumstances test to consider a
trainee's employment status under the FLSA.  *See Parker Fire*, 992 F.2d at 1026-
27.  While it recognized that the Department's six factors are useful in assessing
the totality of the circumstances of a training program, the Tenth Circuit declined
to adopt the Department's position that all six factors must be met before an
individual can be excluded from the Act's broad definition of employee.  *Id*.  The
Fourth and Sixth Circuits have utilized a primary benefit analysis to determine
whether a trainee is an employee under the FLSA.  However, several factors from
the Department's six-part test are incorporated into those primary benefit inquiries.
*See Laurelbrook,* 642 F.3d at 529; *Ensley*, 877 F.2d at 1210 n.2.  In *Ensley,* where
the workers in the company's delivery training program drove, loaded, and
unloaded trucks; restocked store shelves and vending machines; and processed
simple paperwork, the court held that the individuals were employees because on
the one hand, they were performing productive work for the employer, and on the
other hand, they were exposed only to a "very limited and narrow kind[] of
learning[,]" not the advanced level of instruction that they would have received in
a vocational course on outside sales.  877 F.2d at 1210.  In other words, as the
court observed, "the skills learned were either so specific to the job or so general to
be of practically no transferable usefulness."  *Id.*

present in future cases to foreclose an employment relationship." 642 F.3d at 526 n.2; *see Parker Fire,* 992 F.2d at 1027. By requiring each of the six *Portland Terminal* factors to be met before excluding a trainee or intern from the FLSA's protections, however, the Department's test gives effect to what is a very narrow exception to the Act's broad definition of employment. Nothing in the FLSA or in *Portland Terminal* suggests that for-profit employers should be permitted to circumvent their obligation to compensate individuals who are performing productive work by categorizing entry-level or temporary workers as interns or trainees. In fact, the Supreme Court made the opposite observation in *Portland Terminal*, stating that it is "[w]ithout doubt the [FLSA] covers trainees, beginners, apprentices, or learners if they are employed to work for an employer for compensation." *Portland Terminal*, 330 U.S. at 151 (citing 29 U.S.C. 214(a)). Thus, the Department's test excludes from the protections of the FLSA only those trainees or interns who are receiving bona fide training that is for their own benefit, and who receive the training under such close supervision that their efforts do not provide the employer with the productive work that it receives from its regular employees.[7] Only under such limited circumstances does an internship resemble the training program in *Portland Terminal*, and only under such circumstances can

---

[7] Under the Department's test a determination of employment status also requires the other *Portland Terminal* factors to be met.

it be said that the intern is not performing productive work for the employer for which he or she must be compensated.

In *Parker Fire*, the Tenth Circuit, while agreeing that the Department's six criteria were "relevant" to the determination of employee status, ultimately concluded that the Department's requirement that all six criteria be met was inconsistent with a totality of the circumstances inquiry. 992 F.2d at 1029. Specifically, in *Parker Fire*, the Tenth Circuit found that all of the *Portland Terminal* factors had been met except one: no expectation of employment upon completion of the training program. *Id*. The court held that the trainees were not employees on the ground that one factor "cannot carry the entire weight of an inquiry into the totality of the circumstances." *Id.* Taken together, however, the factors effectively consider the totality of the circumstances of the training or internship program and will be dispositive in the usual course. The absence of any single factor undermines whether there is a bona fide trainee/intern relationship sufficient to place such relationships outside the FLSA's broad coverage. Moreover, permitting fewer than six factors to be sufficient to meet the trainee exception necessarily weakens the test, and permits it to be applied differently in each case. Such subjectivity also makes it more difficult for employers to determine whether their interns are employees subject to the FLSA.

25

9.  In *Laurelbrook*, the Sixth Circuit concluded that a "primary benefit" test was the appropriate test for employee status in a trainee setting, particularly in an educational environment.  642 F.3d at 526.  As applied to an internship or trainee situation, however, a primary benefit test could yield significantly different results. In an internship context, for example, a primary benefit test could be applied to exclude from the protections of the FLSA interns who are receiving very basic training on the employer's operations while performing productive work for the employer, on the theory that because the interns are new entrants to the workforce, even the most rudimentary instruction inures to their benefit.  Obviously, such a construction of the Act, which relies on subjective judgment rather than the objective analysis of whether the intern was employed to work, cannot stand.

Similarly, a primary benefit test does not objectively measure an employment relationship in a training setting, but invites greater subjectivity into the employee/trainee analysis.  *See Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. at 516, 532 (S.D.N.Y. 2013).  As a stand-alone criterion, it provides great leeway for arguing either side, and does not afford the certainty or thoroughness that the Department's encompassing six-factor test supplies, not only to the courts but to defendants and plaintiffs as well.  As then-judge Sotomayor observed in *Archie*, permitting a primary benefit test to play the decisive role in determining employee status potentially will have the most detrimental effect on disadvantaged

26

individuals who have the most need for training *and* the greatest need for the Act's

protections. 997 F. Supp. at 533. In *Archie*, the district court readily

acknowledged that homeless individuals "benefitted enormously" from their

participation in a job training program. *Id.* However, after assessing the other

factors in the six-part test, which showed that the participants did not receive

training similar to that given in a vocational training program and were performing

productive work, displaced regular employees, and did not work under meaningful

supervision, the district court concluded that the individuals were employees. *Id.;*

*cf. Velez v. Sanchez*, 693 F.3d 308, 330 (2d Cir. 2012) (in a different context, using

primary benefit as one of seven factors relevant to employee status under the

FLSA).[8] Application of the primary benefit test to the facts in *Archie* could have

resulted in the participants being deemed trainees, even when they performed

---

[8] As the district court recognized, *Velez* is not applicable to the question presented
here because that case addresses the proper test to apply to determine whether an
individual who lives and works in an individual's home is "employed" as a
domestic service worker for purposes of the FLSA. *See Wang v. Hearst Corp.*, No.
12-cv-793, slip op. at 3 (S.D.N.Y. June 27, 2013); *see also Velez*, 693 F.3d at 326.
*Velez* notes that different tests have been developed to measure employment status
under the FLSA depending on the context in which the question of employment
arises, and that this Court has utilized some of those tests to determine, for
example, joint employment and independent contractor status. 693 F.3d at 326-27.
Noting that it "has not clarified the test to determine the 'economic reality' in a
domestic service context," this Court proceeded to set forth the factors it found
"particularly relevant" to this inquiry, although it noted that it was doing so only
"in the absence of further guidance from the Department of Labor." *Id.* at 327,
329, 330-31.

27

productive work for the company.[9]  Finally, a primary benefit test does not give effect to the Supreme Court's decision in *Portland Terminal*, which did not weigh the relative benefits to the parties but accepted as unchallenged the fact that only the trainees benefitted from the training.  *See Fox Searchlight*, 293 F.R.D. at 531 (citing *Portland Terminal*, 330 U.S. at 153).

---

[9] The *Laurelbrook* court relied on "intangible benefits," an amorphous standard that could easily be utilized to place more student learners, trainees, and interns, who would otherwise qualify as employees, outside the Act's protections.  The use of intangible benefits is so broad and open-ended that it is reasonable to expect that students, interns, and other trainees, who all arguably receive some "intangible" benefits from their exposure to the work environment, would necessarily have a more difficult time establishing that they are employees under the FLSA.  Under the Department's test, intangible benefits are accounted for in a framework that considers other crucial factors to employee status.

CONCLUSION

For the foregoing reasons, this Court should adopt the Department's test for determining whether a trainee or intern is an "employee" under the FLSA.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

PAUL L. FRIEDEN
Counsel for Appellate Litigation

s/Maria Van Buren
MARIA VAN BUREN
Senior Attorney
U.S. Department of Labor
Office of the Solicitor
Room N-2716
200 Constitution Avenue, NW
Washington, DC 20210
(202) 693-5555

29

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 29(c)(5) and (d), and 32(a)(7)(C), I certify the following with respect to the foregoing amicus brief of the Secretary of Labor:

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 29(d) and 32(a)(7)(B) because it contains 6,871 words, excluding exempt material, according to the count of Microsoft Word.

The brief was prepared using Microsoft Word 2010.


<u>April 4, 2014</u>            /s/Maria Van Buren
DATE                 MARIA VAN BUREN
                     Senior Attorney

30

## CERTIFICATE OF SERVICE AND ECF COMPLIANCE

I hereby certify that, on this 4th day of April 2014, the Brief for the

Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellants, was filed

electronically with the Clerk of the Court for the United States Court of Appeals

for the Second Circuit by using the Court's appellate CM/ECF system.  Counsel of

record listed below are registered CM/ECF users and service to them was

accomplished by the Court's appellate CM/ECF system:

> Rachel Bien, Outten & Golden LLP
> Adam T. Klein, Outten & Golden LLP
> Juno Turner, Esq., Outten & Golden LLP
> Jonathan R. Donnellan, Esq., Hearst Corporation
> Shelley Sanders Kehl, Esq., Bond, Schoeneck & King, PLLC

In addition, I hereby certify that the original and six copies of the foregoing

Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-

Appellants, which are exact copies of the CM/ECF filing, were sent by prepaid,

overnight delivery to the Clerk of the Court for the United States Court of Appeals

for the Second Circuit pursuant to Local Rule 31.1.

> /s/Maria Van Buren
> MARIA VAN BUREN
> Senior Attorney
> U.S. Department of Labor
> Office of the Solicitor, Room N-2716
> 200 Constitution Avenue, NW
> Washington, DC 20210
> (202) 693-5555

31