# 13-4480-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

———————⬥———————

XUEDAN WANG, on behalf of herself and all others similarly situated, ELIZABETH
MANCINI, MATTHEW JORDAN WAGSTER, STEPHANIE LAUREN SKORKA, ERIN E.
SPENCER, ALEXANDRA RAPPAPORT, SARAH WHEELS, CAITLIN LESZUK,

*Plaintiffs – Appellants,*

JESSICA ANN BEST, PAUL VANCE, COURTNEY HOLT, JANET E. GLAZIER, REBECCA E.
DIXON, ERIN D. SULLIVAN, CARLY ROCKWELL, DANA LYNN VOGEL,

*Plaintiffs,*

v.

THE HEARST CORPORATION,

*Defendant – Appellee*

————————————————

On Appeal from the United States District Court for
the Southern District of New York, Civil Action No. 12-cv-793

## BRIEF FOR DEFENDANT-APPELLEE

Jonathan R. Donnellan
Kristina E. Findikyan
Courtenay O'Connor
Hearst Corporation
300 West 57th Street
New York, New York 10019
(212) 841-7000
*Counsel for Defendant-Appellee*
*The Hearst Corporation*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Appellee states the following:

Hearst Corporation is a privately-held company with no parent corporation.

No publicly held corporation owns 10% or more of Hearst Corporation stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................v

COUNTERSTATEMENT OF QUESTION PRESENTED ....................................1

COUNTERSTATEMENT OF THE CASE.................................................1

    I.     The Factual Context: Hearst's 19 Magazines And Multiple Magazine Departments Operate Valuable Student Internship Programs ..............3

    II.    The Legal Context: Procedural History And District Court Order.......7

    III.   Plaintiffs' Interlocutory Appeal ................................................8

STANDARD OF REVIEW ...................................................................9

SUMMARY OF ARGUMENT ................................................................9

ARGUMENT ....................................................................................14

    I.     THE DISTRICT COURT CORRECTLY APPLIED A PRIMARY BENEFICIARY STANDARD FOR DETERMINING WHETHER A STUDENT INTERN IS AN EMPLOYEE ....................................14

          A.    The Primary Beneficiary Standard Is Uniformly Regarded As The Correct Legal Test In The Context Of Unpaid Student Workers ...................................................................15

          B.    The Primary Beneficiary Standard Is Rooted In *Walling v. Portland Terminal*, Which Reflects Limits Grounded In The FLSA's Policy And Purpose....................................22

          C.    The Primary Beneficiary Standard Facilitates Thoughtful Consideration Of Internships To Prevent Exploitation While Not Prohibiting Learning And Training Opportunities For Students ...................................................................25

II.    THE ALTERNATIVE STANDARDS PROPOSED BY
       PLAINTIFFS, THE *GLATT* COURT, AND THE DEPARTMENT
       OF LABOR ARE UNPRECEDENTED, INFLEXIBLE,
       ANTITHETICAL TO EXISTING LAW, AND WOULD DEFEAT
       THE FLSA'S AIM TO PROMOTE TRAINING AND
       EMPLOYMENT OPPORTUNITIES ................................................27

       A.    Plaintiffs' Proposed Standard Is Antithetical To All Existing
             Law.........................................................................................28

       B.    The *Glatt* Court's Flawed Test Is Premised Upon A
             Misreading Of *Portland Terminal* ...........................................35

       C.    The DOL's Rigid Checklist Is Inconsistent With A Totality
             Of The Circumstances Approach, Inconsistent With Its Own
             Practice, And Has Already Been Rejected By Two Circuits....39

       D.    Plaintiffs' Alternative Legal Standards Would Produce
             Perverse Incentives And Lead To Fewer School-Sanctioned
             Internship Programs .................................................................43

III.   THE COURT SHOULD NOT ACCEPT PLAINTIFFS'
       INVITATION TO GO BEYOND THE CONTROLLING LEGAL
       STANDARD ON THIS INTERLOCUTORY APPEAL; THERE ARE
       NO GROUNDS TO REVIEW THE DISTRICT COURT'S CLASS
       CERTIFICATION OR SUMMARY JUDGMENT FINDINGS........45

       A.    Class Certification....................................................................45

       B.    Summary Judgment ..................................................................47

IV.    IF THIS COURT DOES REVIEW THE DISTRICT COURT'S
       ORDER BEYOND THE CONTROLLING LEGAL STANDARD,
       ITS DENIALS OF SUMMARY JUDGMENT AND CLASS
       CERTIFICATION SHOULD BE AFFIRMED .................................49

       A.    Class Certification....................................................................49

       B.    Summary Judgment ..................................................................52

CONCLUSION ................................................................................57

CERTIFICATE OF COMPLIANCE ...................................................58

CERTIFICATE OF SERVICE .............................................................59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archie v. Grand Cent. P'ship, Inc.*,
  997 F. Supp. 504 (S.D.N.Y. 1998) ..............................................................*passim*

*Atkins v. General Motors Corp.*,
  701 F.2d 1124 (5th Cir. 1983) ...........................................................................41

*Blair v. Wills*,
  420 F.3d 823 (8th Cir. 2005) ..............................................................16, 19, 34

*Brock v. Superior Care, Inc.*,
  840 F.2d 1054 (2d Cir. 1988) ...........................................................................38

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)................................................................................50, 52

*Demayo v. Palms W. Hosp., L.P.*,
  918 F. Supp. 2d 1287 (S.D. Fla. 2013)...........................................16, 20, 30, 34

*Donovan v. Am. Airlines, Inc.*,
  686 F.2d 267 (5th Cir. 1982) ...........................................................................16

*Espenscheid v. DirectSat USA, LLC*,
  705 F.3d 770 (7th Cir. 2013) ...........................................................................50

*Freeman v. NBC, Inc.*,
  80 F.3d 78 (2d Cir. 1996) ................................................................................41

*Glatt v. Fox Searchlight Pictures, Inc.*,
  293 F.R.D. 516 (S.D.N.Y. 2013) ..............................................................*passim*

*Holzapfel v. Town of Newburgh, N.Y.*,
  145 F.3d 516 (2d Cir. 1998) .............................................................................22

*Inst. for Scientific Info., Inc. v. U.S. Postal Serv.*,
  555 F.2d 128 (2d Cir. 1978) .............................................................................41

*Kaplan v. Code Blue Billing & Coding, Inc.*,
  504 F. App'x 831 (11th Cir. 2013), *cert. denied*, 134 S. Ct. 618
  (2013)...................................................................................16, 19, 34, 42

*Koehler v. Bank of Bermuda Ltd.*,
  101 F.3d 863 (2d Cir. 1996) .......................................................46, 47

*La. Patients' Comp. Fund Oversight Bd. v. St. Paul Fire & Marine Ins. Co.*,
  411 F.3d 585 (5th Cir. 2005) ............................................................47

*Marshall v. Baptist Hospital, Inc.*,
  473 F. Supp. 465 (M.D. Tenn. 1979)..................................................19

*Marshall v. Regis Educational Corp.*,
  666 F.2d 1324 (10th Cir. 1981) .........................................................19

*McFarlin v. Conseco Servs., LLC*,
  381 F.3d 1251 (11th Cir. 2004) ....................................................47, 48

*McLaughlin v. Ensley*,
  877 F.2d 1207 (4th Cir. 1989) ..........................................................16

*Morgan v. Family Dollar Stores, Inc.*,
  551 F.3d 1233 (11th Cir. 2008) .........................................................51

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) .....................................................*passim*

*Myers v. Hertz Corp.*,
  No. 02 Civ. 4325, 2007 WL 2126264 (E.D.N.Y. July 24, 2007).....................50

*New York v. Shalala*,
  119 F.3d 175 (2d Cir. 2000) .............................................................41

*Regents of Univ. of Mich. v. Ewing*,
  474 U.S. 214 (1985)........................................................................18

*Reich v. ConAgra, Inc.*,
  987 F.2d 1357 (8th Cir. 1993) ..........................................................31

*Reich v. Parker Fire Prot. Dist.*,
  992 F.2d 1023 (10th Cir. 1993) .................................................*passim*

*Richardson Electronics, Ltd. v. Panache Broadcasting*,
   202 F.3d 957 (7th Cir. 2000) ...........................................................45

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947)........................................................................25

*Singh v. City of New York*,
   524 F.3d 361 (2d Cir. 2008) ...........................................................22

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944).........................................................................42

*Solis v. Laurelbrook Sanitarium & School, Inc.*,
   642 F.3d 518 (6th Cir. 2011) ....................................................*passim*

*Steelman v. Hirsch*,
   473 F.3d 124 (4th Cir. 2007) ...........................................................31

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
   471 U.S. 290 (1985).............................................................24, 25, 30

*United States v. Rosenwasser*,
   323 U.S. 360 (1945)...................................................................35, 36

*Velez v. Sanchez*,
   693 F.3d 308 (2d Cir. 2012) ....................................................*passim*

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)...........................................................50, 51, 52

*Walling v. Portland Terminal*,
   330 U.S. 148 (1947)................................................................*passim*

*Williams v. Strickland*,
   87 F.3d 1064 (9th Cir. 1996) .....................................................25, 30

*Wirtz v. Wardlaw*,
   339 F.2d 785 (4th Cir. 1964) ...........................................................20

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
   516 U.S. 199 (1996)........................................................................45

*Zheng v. Liberty Apparel Co. Inc.*,
  355 F.3d 61 (2d Cir. 2003) ..........................................................................38, 48

**Statutes**

28 U.S.C. § 1292(b) ............................................................................*passim*

29 U.S.C. § 214 ........................................................................................30

**Other Authorities**

29 C.F.R. § 520.300 .................................................................................30

29 C.F.R. § 520.404(f) .............................................................................30

## COUNTERSTATEMENT OF QUESTION PRESENTED

Whether the District Court correctly concluded that the applicable legal standard for determining whether an unpaid student intern is an "employee" for purposes of the Fair Labor Standards Act ("FLSA" or "Act") and New York Labor Law ("NYLL") is a totality of the circumstances analysis focused on the primary beneficiary of the relationship, consistent with this Court's precedent, the Supreme Court's decision in *Walling v. Portland Terminal*, 330 U.S. 148 (1947), and the holding of every circuit court to face the question.

## COUNTERSTATEMENT OF THE CASE

This interlocutory appeal presents a single pure question of law, namely, what legal standard applies in determining whether an unpaid student intern is an "employee" for purposes of the FLSA and NYLL. This controlling question of law is the only issue properly before the Court. The factual context in which this question arises is a putative class challenge to the one-hundred-plus distinct student intern programs run by Hearst's nineteen different U.S. magazines and corporate magazine departments. The legal context in which this question arises is a split in authority in the district court on the controlling legal standard. Plaintiffs challenge Judge Baer's well-reasoned decision on this issue, where he held that the applicable test for determining whether an unpaid intern is an employee is a totality of the circumstances analysis focused on who is the primary beneficiary of the

relationship. (Special Appendix ("SPA") 6) Judge Baer's conclusion is consistent with the approach of every court to address the issue of an unpaid student or trainee's employment status, including the Fourth, Fifth, Sixth, Eighth, Tenth and Eleventh Circuits.

Several weeks later, in *Glatt v. Fox Searchlight Pictures*, a separate case involving unpaid interns that is to be heard in tandem with this appeal, Judge Pauley applied a different, unprecedented standard on very different facts to two non-student plaintiffs in that case, Glatt and Footman, with internships of uncertain duration. While purporting to apply a totality of the circumstances test, Judge Pauley expressly rejected the primary beneficiary analysis recognized by this Court as the proper approach in evaluating unpaid students and trainees, found that the important factor of expectation of compensation "adds little," and discounted other key factors such as the educational value of internships and their benefits to interns. Judge Pauley compounded the error by mischaracterizing the Supreme Court's seminal decision in *Walling v. Portland Terminal* as creating a "narrow exception" to the FLSA's "expansive definition" of "employee," rather than properly recognizing it as an articulation of the FLSA's finite scope, a scope with limits grounded in the law's animating policy of protecting those who work for pay without setting up barriers to the pursuit of unpaid training that may lead to employment opportunities. Judge Pauley's intern "exception" approach suggests a

- 2 -

presumption of employee status that must be rebutted by defendants, effectively reversing the established burden of proof that belongs to plaintiffs to show that they are employees under the FLSA.

Based on these two distinct approaches, plaintiffs sought interlocutory review of Judge Baer's ruling denying their motions for class certification and summary judgment following the close of discovery. Significantly, plaintiffs sought review of the controlling question of law under 28 U.S.C. § 1292(b) only, and chose not to appeal Judge Baer's denial of class certification under Federal Rule of Civil Procedure 23(f).

## I. The Factual Context: Hearst's 19 Magazines And Multiple Magazine Departments Operate Valuable Student Internship Programs

Plaintiffs devote fourteen pages of their brief to a separate "statement of facts," presenting a very distorted view of a rich factual record that includes testimony from over one hundred former student interns in support of Hearst, attesting to the enormous benefits they derived from their internship experiences, as compared with the eight plaintiffs, who are the only former interns who ultimately chose to opt in to the collective that was provisionally certified by the District Court. Plaintiffs' facts are not relevant to the single pure question of law on this appeal, which concerns the correct legal standard. The following summary

of facts is limited to provide context to the legal question presented, and does not address the full record below.[1]

The various unpaid intern programs at issue in this case are available only to adult students who receive academic credit from an accredited college or university. These programs, which number over 100, are distinct. They reflect not only a diversity of experiential learning opportunities based on magazine and corporate department (journalism, advertising, scientific product testing, web publishing, etc.) but also distinct training (some magazines held classroom instruction, others sponsored interns to attend industry offsites, others hosted lunch speaker sessions), supervision and more.[2]

They share only three common elements, all for internships of short duration spanning a semester or summer vacation. <u>First</u>, they are educational and scholastic in nature. Over one hundred different colleges and universities have awarded academic credit to unpaid interns at Hearst magazines and magazine departments

---

[1] Citations to the factual record in this brief reflect only a representative sample of the extensive supporting evidence presented to the District Court on each point.

[2] *See, e.g.*, A5338-44, A3476-80, A3482-88, A3490-93, A3495-500, A3502-10, A3512-16, A3524-28, A3530-34, A5346-52, A3552-54, A3559-62, A3602-05, A5299-305, A3607-11, A3625-29, A3669-72, A3690-94, A3803-13, A5269-74, A5318-25, A3842-45, A5307-16, A3856-60, A3862-66, A3884-91, A5332-36, A3919-24, A3931-34.

during the time period at issue. (Appendix ("A") 3632(¶4)) Hearst received advance confirmation from these schools sanctioning their students' participation in the various internship programs and confirming that the students would receive academic credit for their internships. (A3631-3632(¶3)[3] Many of the interns' universities required the students to complete an internship to graduate (*see, e.g.*, A2592(¶3); A2782(¶4); A4093(134:10-17); A4096(156:3-8); A4097(158:17-159:3)); others "strongly recommended" or encouraged an internship (*see, e.g.*, A2562(¶3); A3592(¶3); A4263(133:14-22)). Many also required the student interns to complete additional academic work including school papers, projects, and classes related to their internships. (*See, e.g.*, A3586(¶4); A2801(¶4))

Second, it was clear to each student that the internship was an unpaid position. (*See, e.g.*, A2734(¶3); A3644(¶3)) Some colleges specifically required the internship to be unpaid to qualify for academic credit. (*See, e.g.*, A2695(¶3); A4157-58(113:18-114:3); A4480) Finally, there was no promise or expectation of employment following the conclusion of the internship. (*See, e.g.*, A2734(¶4); A2801(¶5))

---

[3] As the proposed amicus brief filed in this case by the American Council on Education, et al. ("ACE") explains, "a valuable component of total education is the opportunity to apply academic knowledge in actual work settings. [Internships] enable students to integrate classroom knowledge and theory with practical applications in ways that cannot be accomplished within the four walls of a lecture hall or through on-line learning." (ACE Proposed Amicus Br. 4; *see also* A3868-71)

The eight plaintiffs' internships shared these common elements. Each plaintiff was a college student who understood and agreed to the college credit requirement (although some of them later failed to take the necessary steps to receive it), each understood the internship was unpaid, and each pursued the internship to fulfill individual goals, knowing there was no promise of a job at the end.

Beyond the three common elements listed above, the internship experiences were distinct. No uniform policy, practice, or curriculum linked the diverse intern programs, and the environments and experiences were markedly different. As Judge Baer concluded, "[t]he duties performed by [the plaintiffs] – to say nothing of the variation within each magazine and corporate department – clearly suggest that internships varied greatly from magazine to magazine." (SPA-9)

Discovery showed that interns at the various Hearst magazines and magazine departments benefitted from their internships, though the type and degree of benefit varied depending on the circumstances of the internship. For example, students reported that their internships taught them the fine points of still life photography, sharpened their focus in selecting college courses upon returning to school, sparked an interest in nutrition research as a possible career after a Good Housekeeping Research Institute internship, and taught them professionalism in a corporate environment, including in their interactions with high-level managers.

(*See, e.g.*, A2440(¶9); A3582(¶11); A3473(¶9), A3699(¶10))  On the other side of the balance, each intern made different contributions to (and imposed different burdens on) the various Hearst magazines and magazine departments.  Because internships are principally learning opportunities, interns often impeded or slowed down magazine staff.  (*See, e.g.*, A3504-3509(¶¶ 6, 7, 11, 13, 15); A3593-94(¶8); A3647(¶¶11, 13); A4415(10:18-11:5), A4416(25:4-17), A4417(32:16-24))  Intern tasks were often designed as learning experiences that would be of no use whatsoever to the magazine or department or else to teach about a department's operations through tasks of an entry-level employee.  (*See, e.g.*, A5340-41(¶13); A5322(¶15))  This occurred because the internship focus is on training opportunities and interns have few skills and generally no experience in the inner workings of a magazine.  (*See, e.g.*, A3897(¶12); A3646(¶10))

## II.    The Legal Context: Procedural History And District Court Order

On February 1, 2012, lead plaintiff Xuedan Wang filed this suit against Hearst, alleging that she and a putative class of interns were unlawfully deprived of wages in violation of the FLSA and NYLL.  This action was certified as a collective under the FLSA's lenient first stage certification standard, prompting notice to former and current interns and an opportunity to opt in.  Only seven former interns ultimately opted in, resulting in a collective consisting of the eight plaintiffs.  Following discovery, plaintiffs moved for partial summary judgment,

seeking a determination that they are employees covered by the FLSA and NYLL. They also moved for certification of a single broad class across all 19 Hearst magazines and all corporate magazine departments pursuant to Federal Rule of Civil Procedure 23.

On May 8, 2013, the District Court issued its opinion and order denying plaintiffs' motions. In that order, the court concluded that the correct legal standard to determine whether unpaid interns are "employees" under the FLSA and NYLL is a totality of the circumstances test with a focus on who is the primary beneficiary, following the lead of every circuit court to address the question of unpaid students or trainees. As part of its analysis, the court considered the six factors set forth in the Department of Labor's April 2010 "Fact Sheet #71" addressing internships because they "suggest[] a framework." (SPA-6) The court rejected plaintiffs' argument for an unprecedented alternative standard focused only on whether the intern performed work, characterizing it as "one-dimensional" and based on a "misplaced" reading of case law. (*Id.*)

## III.    Plaintiffs' Interlocutory Appeal

Plaintiffs did *not* seek permission to appeal the District Court's denial of their class certification motion under Rule 23(f). Instead, more than a month after that deadline passed, they chose to file a petition pursuant to 28 U.S.C. § 1292(b) seeking a determination of the correct legal standard applicable to their claims that

they were employees. (A5623)  Hearst did not oppose plaintiffs' petition to the extent it sought immediate review of the legal standard set forth in the District Court's May 8, 2013 order, though it strongly disagreed with plaintiffs' characterization of that order and the merits arguments embedded in their petition. (No. 13-2616-cv, ECF No. 13 at 1)  On November 26, 2013, this Court granted plaintiffs' petition and ordered that this matter be considered in tandem with the appeal in *Glatt v. Fox Searchlight Pictures, Inc*., No. 13-4478-cv. (ECF No. 3)

## STANDARD OF REVIEW

The question whether an incorrect legal standard has been used is an issue of law to be reviewed *de novo*.  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

## SUMMARY OF ARGUMENT

The sole issue properly before the Court on this interlocutory appeal is the correct legal standard to be applied in determining whether an unpaid student intern is an employee for purposes of the FLSA.[4]  The District Court properly concluded that the standard is a totality of the circumstances analysis focused on who is the primary beneficiary of the relationship.  This primary beneficiary

---

[4] Plaintiffs bring claims under both the NYLL and the FLSA.  As the District Court found, and the parties do not dispute, the "courts in this circuit have held that the NYLL 'embodies the same standard for employment as the FLSA.'"  (SPA-4 n.3, quoting *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 260 (S.D.N.Y. 2012))  Accordingly, this brief focuses on FLSA cases, as did plaintiffs and the District Court.

standard is premised on and fully consistent with precedent of this Court, the Supreme Court and every circuit court to face the question presented here. This Court acknowledged this in *Velez v. Sanchez*, 693 F.3d 308, 326-331 (2d Cir. 2012), which specifically states that a primary beneficiary analysis is the approach taken by courts in the context of unpaid students and trainees. *Velez*, 693 F.3d at 330.

This approach traces back to the Supreme Court's ruling in *Walling v. Portland Terminal*, 330 U.S. 148 (1947), where the Court made clear that the FLSA was not intended to cover those who choose to work for their own reasons without compensation. The Court reviewed the totality of circumstances and concluded that railroad trainees who worked in an unpaid training program for their own benefit and without expectation of compensation were not employees covered by the FLSA. According to the Court, the ultimate question for determining whether one qualifies as an employee is whether the company or the individual "most greatly benefit[ed]" from the work performed. *See id*. at 153. This is precisely the inquiry contemplated by this Court in *Velez* and applied by the District Court in this case.

In contrast, plaintiffs urge this Court to adopt an unprecedented standard that is the antithesis of a totality of the circumstances analysis. The District Court properly rejected it as being "one-dimensional," because it focuses only on

whether a student intern provides an "immediate advantage" to the host company. If an "immediate advantage" is found, plaintiffs argue that this fact alone should create an employment relationship under the FLSA, without any consideration of any other factor, such as expectation of compensation, educational value, benefit to the intern, or burden to the host company. Plaintiffs' proposed standard is a marked departure from the FLSA totality of the circumstances analysis, and permits no balancing of the benefits or inquiry into who is the primary beneficiary of the internship. Their attempt to tie this myopic, one-sided standard to the Supreme Court's decision in *Portland Terminal* was correctly characterized by the District Court as "misplaced" and "not logical[]." (SPA-6)

Plaintiffs' proposed standard is contrary to existing law also because it seeks to reverse the burden of proof under the FLSA, shifting it from plaintiffs to defendants. Even under their own contrived standard, plaintiffs argue that it is not the interns' burden to prove that they provided the host company with an immediate advantage, but rather it is up to the host to prove as a "defense" that it did not receive an immediate advantage from the interns' work. What plaintiffs are really arguing, then, is that interns are presumed employees under the FLSA merely by showing they did some "productive work," at which point the burden falls upon defendant to mount a "defense" under the purported "trainee exception" by proving the intern provided it with no immediate advantage. Plaintiffs make

reference in their brief to the "exception" and Hearst's "defense" and the required showing necessary to make out such a defense more than thirty times, repeating it like a mantra. Plaintiffs' reliance on repetition is not surprising, given the total lack of legal support for their standard. First, the burden of proving employee status under the FLSA always falls upon plaintiff. Second, it is well established that there is no presumption of employee status under the FLSA and work alone does not confer that status; *Portland Terminal* itself made that clear – plaintiffs there did "actual" work and were not employees. Third, there is no trainee "defense" or "exception," much less one that shifts plaintiffs' burden of proof. No case has ever made reference to a trainee "defense," and the only case to refer to a trainee "exception" is *Glatt*.

While plaintiffs rely heavily on *Glatt* for support, that reliance is misplaced. First, their one-dimensional test goes much farther than *Glatt*. Second, *Glatt*'s analysis was a conscious and explicit departure from established law. While purporting to apply a totality of the circumstances test, *Glatt* expressly rejected the primary beneficiary analysis even while acknowledging this and other courts' recognition of that analysis as the correct approach, found that expectation of compensation "adds little" notwithstanding its importance in *Portland Terminal*, and discounted other key factors such as the educational value of internships and their benefits to interns, which would be part of a true totality of the circumstances

analysis, especially one in which the goal is to determine the primary beneficiary of the relationship.

At bottom, plaintiffs are seeking to avoid the full picture of unpaid student internships by advocating strict liability through presumed employee status. Their proposed standard, in one stroke, would transform into employment the most meaningful and sought after types of internships, where interns get to actually engage in the workplace and do some work.[5]  At the same time, plaintiffs' approach would remove any consideration of the significant educational value of internships and the enormous benefits young adults derive from them – benefits that are uncontroverted in the record here.  It would also render irrelevant the receipt of academic credit for internships, which is the best evidence of their educational value, reflecting as it does the considered judgment of accredited colleges and universities.

Paradoxically, a defendant could avoid liability under plaintiffs' proposed standard only by proving as a "defense" that its intern did no work at all, or performed so poorly that the work was of no immediate benefit.  This would, of course, create an enormous disincentive to provide student interns with real,

---

[5] As the ACE proposed amicus brief explains, "[t]he real-work internship affords the student the chance . . . to apply what he/she already has learned in class or on-line to an actual work assignment . . . .  Furthermore, students discover what additional course work they need to be able to pursue certain fields."  (ACE Proposed Amicus Br. 24-25)

meaningful assignments connected to the workplace, which is what makes internships desirable in the first place. It is not an overstatement to say that the likely practical effect of plaintiffs' one-dimensional test, if adopted, would be the end of student internships in the private sector. The biggest losers, it is fair to say, would be the many students who seek out unpaid internships for the benefits they provide. The order below should be affirmed.

Finally, there is no basis for this Court to go beyond the pure legal question of the controlling standard in this interlocutory appeal. Plaintiffs chose not to appeal the denial of class certification under Fed. R. Civ. P. 23(f), allowing the time for such a petition to lapse before seeking this appeal. Moreover, interlocutory appeal under 28 U.S.C. § 1292(b) is not the proper vehicle to review summary judgment determinations. In the event the Court decides upon a new governing legal standard, it should remand to the District Court. But even if the Court does revisit the District Court's merits rulings, they are fully supported by the record and should be affirmed, no matter what standard applies.

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY APPLIED A PRIMARY BENEFICIARY STANDARD FOR DETERMINING WHETHER A STUDENT INTERN IS AN EMPLOYEE

Employee status under the FLSA is determined by the "economic reality" of the situation, which requires consideration of the totality of the circumstances.

- 14 -

*Velez*, 693 F.3d at 326, 328-31. Courts apply different multi-factored totality of the circumstances tests depending on the type of relationship at issue. *Id*. at 326-27, 330 (identifying different tests for claims involving independent contractors, joint employers, domestic service workers, and students/trainees). Each test is flexibly applied on a case-by-case basis to capture the totality of the individual circumstances in determining whether someone is an employee. *Id.* at 326, 329-30; *Solis v. Laurelbrook Sanitarium & School, Inc.*, 642 F.3d 518, 522 (6th Cir. 2011).

In the context of unpaid students and trainees, a primary beneficiary analysis is the correct approach in evaluating the totality of the circumstances. This analysis has been widely adopted, and recognized by this Court as the correct test in cases such as this. The District Court properly followed these precedents here. Its conclusion as to the controlling legal standard should be affirmed.

## A. The Primary Beneficiary Standard Is Uniformly Regarded As The Correct Legal Test In The Context Of Unpaid Student Workers

This Court has recognized that, in order to determine the totality of the circumstances in unpaid trainee and student cases, the "approach taken by courts" is a primary beneficiary test, also called a balance of the benefits. *Velez*, 693 F.3d at 330. To date, six circuit courts have adopted this standard and none have rejected it. The Fourth, Fifth, Sixth, Eighth, Tenth and Eleventh Circuits, as well as the Southern District of New York, have all employed a balance of the benefits

- 15 -

analysis to guide the totality of the circumstances determination in the context of students, externs and trainees. *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005); *Reich v. Parker Fire Prot. Dist.*, 992 F.2d 1023, 1028 (10th Cir. 1993); *McLaughlin v. Ensley*, 877 F.2d 1207, 1209 (4th Cir. 1989); *Donovan v. Am. Airlines, Inc.*, 686 F.2d 267, 271-72 (5th Cir. 1982); *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 534-35 (S.D.N.Y. 1998); *see also Kaplan v. Code Blue Billing & Coding, Inc.*, 504 F. App'x 831, 834 (11th Cir. 2013) (implicitly balancing the benefits to determine that two student externs were not employees); *Demayo v. Palms W. Hosp., L.P.*, 918 F. Supp. 2d 1287, 1292 (S.D. Fla. 2013).

The dispositive question in a balance of the benefits analysis is whether the trainee or the putative employer was the primary beneficiary of the relationship. *See, e.g.*, *Velez*, 693 F.3d at 330 ("[W]ho is the primary recipient of benefits from the relationship."). In *Velez*, this Court cited two cases to support its conclusion that a primary beneficiary analysis is the proper approach in the context of students and trainees. *Id.* at 330 (citing *Laurelbrook* and *Blair*, 420 F.3d at 829). The most recent of those cases – *Solis v. Laurelbrook* – collects cases from around the country that have applied a balance of the benefits analysis in the context of students or trainees. 642 F.3d at 528-29 (collecting twelve cases). It also demonstrates how the test works. Determining the primary beneficiary requires a balancing of (a) the benefits derived by the student (both tangible and intangible),

(b) the detriment to the employer, and (c) the benefit to the employer from the student's activities. *Id.* at 530-32. In that case, the court concluded that while the defendant school and sanitarium benefited from students' work in the sanitarium, the totality of the circumstances showed that the primary benefit went to the students and, as such, they were not employees. *Id.* at 529-31.

In conducting its analysis, the court in *Laurelbrook* considered the six factors set forth in the DOL's Fact Sheet #71, along with other facts. 642 F.3d at 529-31. At the same time, the court specifically rejected the DOL's attempt to apply its factors as a rigid checklist. *See, e.g.*, *id.* at 525 (calling it "a poor method for determining employee status," "overly rigid and inconsistent with a totality-of-the-circumstances approach," and "inconsistent with [*Portland Terminal*] itself"); *Parker Fire*, 992 F.2d at 1026-27 (DOL's "all or nothing" approach unsupported by *Portland Terminal* and "unreasonable"). Where courts have cited the DOL factors, they have generally acknowledged them merely as part of the totality of the circumstances to be considered in determining who receives the "primary benefit" in a particular case. For example, in *Archie*, the only precedent applying this test to so-called trainees in this circuit, then-District Court Judge Sotomayor observed that the DOL factors "are not exhaustive and are intended to be consistent with" *Portland Terminal*, noting that both eschew reliance on any single factor and instead require "consideration of all the circumstances." 997 F. Supp. 504, 532

- 17 -

(S.D.N.Y. 1998). In short, the DOL fact sheet may inform the totality of the circumstances test applicable in this case, but it does not confine it or supplant it.

One of the factors that is highly relevant in the context of student interns is the educational value of the internship. Where unpaid work is sanctioned by a student's school – because it is required and/or academic credit is awarded – that has weighed heavily in favor of a determination that the student is the primary beneficiary of that work. The judgment of accredited academic institutions is entitled to particular weight and deference in assessing educational value. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985).[6] In fact, no court of which we are aware has held a student engaged in a school-sanctioned unpaid work program to be an employee with the exception of a single Tennessee district court case decided in 1979.[7] In every other case, courts have held that the student was

---

[6] Colleges and universities believe "that education outside the classroom is important to prepare students to be productive citizens and competent employees. . . . Students pursue internships . . . because of the benefit they derive from reinforcing their knowledge and skills in actual workplace settings." (ACE Proposed Amicus Br. 17-18)

[7] The court in that case, *Marshall v. Baptist Hospital, Inc.*, 473 F. Supp. 465 (M.D. Tenn. 1979), resides in the Sixth Circuit, which decided *Laurelbrook* twenty-six years later. Even without the benefit of *Laurelbrook*, the court applied a primary beneficiary analysis and concluded that college students learning to be x-ray technicians had received "substantial benefit" from their clinical work at a hospital, but found that the hospital benefitted more because it directly charged patients at full rates for that work over long periods after training. *See id.* at 476. Later, in *Laurelbrook*, the Sixth Circuit noted how the court in *Baptist Hospital* balanced the benefits to determine the primary beneficiary. *Laurelbrook*, 642 F.3d

the primary beneficiary in large part because of the educational benefit he or she derived from school-sanctioned work.

In *Laurelbrook*, the Sixth Circuit held that high school students working without pay at a school-operated sanitarium for purposes of practical training were the primary beneficiaries and not employees. 642 F.3d at 530-32. In *Blair*, the Eighth Circuit held that a high school student whose boarding school required him to engage in unpaid work as part of its curriculum was the primary beneficiary of that work and not an employee. 420 F.3d at 829. In *Kaplan*, the Eleventh Circuit held that students in a medical billing and coding program who worked at unpaid externships, for which they received academic credit, were not employees. 504 F. App'x at 834, *cert. denied*, 134 S. Ct. 618 (2013). In *Marshall v. Regis Educational Corp.*, the Tenth Circuit held that college students who worked as resident hall assistants ("RA's") received more benefit from the RA program than the college and were not employees. 666 F.2d 1324, 1327-28 (10th Cir. 1981). And in *Demayo v. Palms West Hospital, L.P.*, the district court held that under the totality of the circumstances, a surgical technology student engaged in an

---

at 527. The analysis employed in *Baptist Hospital* clearly supports application of the test used by the District Court here. Plaintiffs cite only one other case involving students, *Wirtz v. Wardlaw*, 339 F.2d 785 (4th Cir. 1964), but that fifty year old case did not involve school-sanctioned work, much less unpaid work; it involved clerical work for pay for an insurance salesman that had no relation to any school. However, that case too looked at the benefits to both parties and supports application of a primary beneficiary standard. *Id*. at 787-88.

externship for which she received academic credit was not an employee under the FLSA. 918 F. Supp. 2d at 1292.

All of these cases applied a totality of circumstances analysis, balancing the benefits to determine the primary beneficiary; all of these cases held that the students primarily benefited from the school-sanctioned work. Remarkably, plaintiffs ignore all of these cases involving students and school-sanctioned work in their discussion of how educational value factors into determining whether a student intern is an employee. (Pl. Br. 32-33) They opt instead to cite only cases involving non-student workers engaged in work training programs unaffiliated with any school. (*Id.*) But the cases cited by plaintiffs nevertheless reflect the importance of assessing educational value as part of the analysis, even in those cases that do not involve students or school-sanctioned work.[8] The DOL's opinion letters and practice also make clear the importance of educational value to the analysis, and the significance of academic credit in particular. *See infra* n.20.

Two other DOL factors that are particularly germane to the primary beneficiary analysis in the unpaid intern context are whether there is an expectation of compensation, or the promise of a job at the end. The lack of any expectation of

---

[8] Indeed, in three of the cases cited by plaintiffs (Pl. Br. 32-33), the educational benefit supported a finding that the plaintiffs were not employees (*Parker Fire, American Airlines, Portland Terminal*), while in two others (*Ensley, Archie*) the educational benefit to the plaintiff was evaluated but found insufficient to tip the balance in favor of defendants.

compensation is, perhaps, the best evidence that a person engaged in unpaid work is doing so mainly for their own purposes, not primarily to benefit an employer. Whether there is a promise of a job likewise speaks to the economic reality of the situation and provides a safeguard against exploitation – an answer of "no" ensures that an intern is not foregoing wages because it is necessary to secure a promised paying job.

These factors have proven important in the trainee context. For example, in *Archie*, which involved a work program to assist the homeless, the court stated that one of the "important elements in determining the 'economic reality' of an employment situation" is expectation of compensation. 997 F. Supp. at 533 (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 (1985), in turn citing *Portland Terminal*). There, the plaintiffs were in fact paid, they "worked in contemplation of compensation for the work they performed," they "routinely called Fridays 'pay day' and referred to the money [they] received for their work as 'pay,'" they "believed that the Work Program was a job, and they expected to be paid for it." 997 F. Supp. at 521, 533 (plaintiffs "participated in the program because they thought it was a job."). These facts weighed heavily in favor of an employment relationship.

The other "important element" cited by the *Archie* court in determining the economic reality was whether the employer received an immediate advantage from

the work. *Id*. at 533. In that case, the work performed by the workers was "particularly lucrative," much of the revenue it generated went directly to paying the salaries of the officers and staff of defendant, and defendants could not have met their contractual obligations for that work without plaintiffs. *Id*. at 524, 535. Thus, after "[c]onsidering all the factors," the court concluded that "the defendants benefitted more" and that plaintiffs had satisfied their burden of proving that they were employees and not trainees under the FLSA. *Id*. at 535.

The primary beneficiary analysis is not confined to the student trainee context. This Court has applied it in a variety of FLSA cases. *See, e.g*., *Velez*, 693 F.3d at 330 (domestic service worker); *Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008) (whether commuting time is compensable); *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 523 (2d Cir. 1998) (overtime work).

In short, the primary beneficiary analysis is well established in FLSA cases generally, it is the prevailing standard in unpaid student cases specifically, and it is well suited to deciding those cases fairly in light of the totality of circumstances.

**B. The Primary Beneficiary Standard Is Rooted In *Walling v. Portland Terminal*, Which Reflects Limits Grounded In The FLSA's Policy and Purpose**

The primary beneficiary standard traces its roots to *Portland Terminal*. In that case, the Supreme Court was faced with the question of whether unpaid railroad trainees were employees under the FLSA. On the one hand, the FLSA's

definitions of "employ" ("suffer or permit to work") and "employee" were acknowledged to be broad (330 U.S. at 152), the trainees did "actual work" (*id*. at 149) and there was "no question but that these trainees d[id] work in the kind of activities covered by the Act." *Id*. at 150. On the other hand, the Court held, the FLSA was "obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Id*. at 152. The Court expressly rejected an overly broad construction that would otherwise sweep in students who do school work, and those who worked for their own advantage, purpose or pleasure with no expectation of compensation. *Id*. It found that the trainees were no different than students at school, learning in a place and manner which would "most greatly benefit" them, and that the FLSA was not intended to penalize companies that provided such training free of charge. *Id*. at 153.

*Portland Terminal* spelled out the scope of the FLSA by reference to its purposes. "The Act's purpose as to wages," the Court stated, "was to insure that every person ***whose employment contemplated compensation*** should not be compelled to sell his services for less than the prescribed minimum wage." 330 U.S. at 152 (emphasis added). Conversely, those who had ***no expectation of compensation***, but worked without pay for some other personal advantage or purpose, were held to be outside the scope of the FLSA, as there was "obviously"

- 23 -

no intent to outlaw such relationships. *Id*. In fact, the Court stated, applying the FLSA on those terms might actually *defeat* another of the Act's purposes, which is to increase employment opportunities for inexperienced workers. *Id*. at 151. In other words, *Portland Terminal* makes clear that the purpose of the FLSA is not to ensure that everyone who performs work is paid, as plaintiffs claim, but rather to ensure that everyone who works for pay (and not some other reason) is paid properly.

The Supreme Court has consistently affirmed this limit on the FLSA's scope, citing *Portland Terminal* as precedent. For instance, in *Alamo*, the Court cited *Portland Terminal* for the proposition that "an individual may work for a covered enterprise and nevertheless not be an 'employee.'" 471 U.S. at 299. The *Alamo* Court's determination that plaintiffs in that case were employees turned not on the fact that they performed work, but on the fact that they expected compensation. There, the workers received no pay and viewed themselves as volunteers, but in fact they were "entirely dependent [on the defendant] for long periods." *Id.* at 301 (internal quotation marks and citation omitted). They depended on the defendant for "food, shelter, clothing, transportation and medical benefits," *i.e.,* they depended on the defendant for "wages in another form." *Id.* at 293, 301 (internal quotation marks and citation omitted). This clear evidence of complete economic dependency led the Court to conclude, again citing *Portland*

*Terminal*, that there was an expectation of compensation because, "[u]nder the circumstances," the workers "must have expected to receive in-kind benefits – and expected them in exchange for their services." *Id*. at 301. Because of their economic dependence and receipt of "wages in another form," plaintiffs were held to be employees. *Id.* at 301.

The *Alamo* Court was clear that the FLSA covers "only those who engage in [commercial activities] in expectation of compensation;" "[o]rdinary volunteerism is not [covered]." *Id.* at 302-03; *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728-29 (1947). Consistently, this Court recently cited *Portland Terminal* for the point that a regular salary arrangement is a "significant" factor in finding an employment relationship. *Velez*, 693 F.3d at 330; *see also Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996) (FLSA covers only those with an express or implied agreement for compensation). It is an "important" indicator of the "economic reality" of a trainee work relationship in evaluating the totality of the circumstances. *See Archie*, 997 F. Supp. at 533 (citing *Alamo*, in turn citing *Portland Terminal*).

## C. The Primary Beneficiary Standard Facilitates Thoughtful Consideration of Internships To Prevent Exploitation While Not Prohibiting Learning And Training Opportunities For Students

The primary beneficiary standard should be adhered to because it provides a sure means to fairly and flexibly evaluate the totality of the circumstances in cases

involving students and school-sanctioned internships.  It has proven to be a manageable and predictable standard, "provid[ing] a helpful framework for discerning employee status in learning or training situations."  *Laurelbrook*, 642 F.3d at 529.  It is also faithful to the Supreme Court's decision in *Portland Terminal*.  "By focusing on the benefits flowing to each party . . . the test readily captures the distinction the FLSA attempts to make between trainees and employees."  *Id.* (citing *Portland Terminal*).

It is the only test to ensure that valuable school-sanctioned learning experiences in the workplace remain available to students, as *Portland Terminal* contemplated, while also providing a means to root out exploitative arrangements.[9] It does this by providing a full picture of the relationship between intern and host company, and balances the benefits to each to determine whether the internship is more beneficial to the intern or the company.

The test provides objective measures to determine the student's purpose and the economic realities.  Did the student expect to be paid?  Was the student otherwise economically dependent on the host company?  Was the student promised a job at the end?  Or, alternatively, did the student perform the internship to meet a graduation requirement, obtain academic credit, or some other reason

---

[9] Indeed, it is the test sought by the proposed college and university amici in this case.  (ACE Proposed Amicus Br. 12-14)

related to their educational goals?  Did the student seek a risk-free experiment in

an unfamiliar work setting prior to graduation?  Or was the aim to develop

particular skills to help obtain employment after graduation?

By permitting this inquiry, the primary beneficiary standard leads to an

accurate appraisal of employment status.  It measures the economic realities, the

educational value, the benefit to interns, the benefit to host companies, and fulfills

the intent of the FLSA to not diminish educational or employment opportunities.

****************

In sum, the primary beneficiary analysis best reflects the scope and purpose

of the FLSA, has been widely adopted and used, and is consistent with all

established law.  The District Court properly applied that standard in this case.

## II.  THE ALTERNATIVE STANDARDS PROPOSED BY PLAINTIFFS, THE *GLATT* COURT, AND THE DEPARTMENT OF LABOR ARE UNPRECEDENTED, INFLEXIBLE, ANTITHETICAL TO EXISTING LAW, AND WOULD DEFEAT THE FLSA'S AIM TO PROMOTE TRAINING AND EMPLOYMENT OPPORTUNITIES

Three alternative standards are urged upon this Court for adoption as the

governing test in FLSA intern cases.  First, plaintiffs advocate for a novel and

unprecedented standard mandating employment anytime any intern performs any

work, which the District Court characterized as "one-dimensional," illogical, and

based on a misreading of *Portland Terminal*.

- 27 -

The second standard comes from *Glatt*, which also expressly rejected the primary beneficiary analysis, but purported to look at the totality of the circumstances. In fact, the *Glatt* court limited its analysis to the six DOL factors, and even then found that the expectation of compensation factor "adds little," notwithstanding the clear importance of that factor in *Portland Terminal* and *Velez*, among many other cases. Finally, DOL offers yet another variation, explicitly abandoning even *Glatt*'s lip service to a totality of circumstances analysis for a conjunctive test based on its six factors, creating an employment relationship when any factor points to one. All three of these approaches are unprecedented and contrary to established law and sound policy. Each should be rejected.

## A. Plaintiffs' Proposed Standard Is Antithetical To All Existing Law

Plaintiffs clearly reject the primary beneficiary standard, the totality of the circumstances approach, and the importance of expectation of compensation and academic credit. But they are less clear about the standard they are advocating. Their proposed standard shape-shifts depending on the argument they are making. (*See, e.g.*, Pl. Br. 28, 32, 37, 39 (stating that "a defendant must show that it received no immediate advantage from plaintiffs' work," that individuals who perform "productive work" are employees, that "a defendant must show that the plaintiffs were participants in an educational or vocational training program," and that "employer[s must] match" each of the DOL's six criteria)) In the end, each of

- 28 -

plaintiffs' variously articulated standards boils down to the same thing:  a presumption of employee status based on work alone, while shifting the burden to defendant to prove otherwise.  But plaintiffs do not cite a single case in which any of their various tests has been adopted.  What plaintiffs seek is a change in the law, a brand new standard never adopted by any court, and one they concede would create a circuit split.  (*See id.* at 40 ("The Court should not follow the Tenth Circuit"), 34 ("The Court should not follow the Sixth Circuit's standard."))

Plaintiffs' ill-conceived attempt to appropriate *Portland Terminal* as support for their proposed test warrants particular scrutiny.  That case delineated the scope and purpose of the FLSA in a way that simply cannot be reconciled with plaintiffs' standard.  For instance, plaintiffs cite *Portland Terminal* as support for their central argument that employee status hinges on the performance of "productive work" only (Pl. Br. 28), but *Portland Terminal* says the opposite.  It held that the trainees there who performed "actual work" were ***not*** employees, and further stated that the FLSA definition of employee "cannot be interpreted" to cover them or others who perform unpaid work for their own purpose or advantage.  *See* 330 U.S. at 149, 152.  Later courts have similarly held that the performance of work alone does not make someone an employee.[10]  As the District Court put it, plaintiffs' reading of

---

[10] *See, e.g.*, *Alamo*, 471 U.S. at 299-300; *Parker Fire*, 992 F.2d at 1028-29 (rejecting employee status where "productive work" performed by trainees resulted in *de minimis* benefit to employer); *Demayo*, 918 F. Supp. 2d at 1292 (although

*Portland Terminal* is "misplaced . . . [t]here is no one-dimensional test; rather, the prevailing view is the totality of the circumstances test." (SPA-6) (citing *Alamo*, 471 U.S. at 295)

Similarly, *Portland Terminal* provides no support for plaintiffs' effort to avoid their burden of proving that they are employees. Plaintiffs refer repeatedly to a purported trainee "exception" or "defense" created by *Portland Terminal*, arguing that they are employees unless Hearst proves an exception to the FLSA or a defense.[11] Plaintiffs attempt here to build on their erroneous reading of *Portland Terminal*, effectively claiming a presumption of employee status based on any

---

type of work plaintiff performed may generally be covered by the FLSA, plaintiff was not an employee); *cf. Archie*, 997 F. Supp. at 535 (considering multiple factors including that plaintiffs performed productive work).

[11] Plaintiffs' citations to cases evaluating what constitutes compensable work by those conceded to be employees are irrelevant because they deal with employees, not with the determination as to whether someone is an employee. (Pl. Br. 2, 24-25 (citing test for whether entity is an employer), 31 (referring to Learners provision, which is applied to certain employees in certain industries), 55 (citing cases regarding whether employees must be paid)) Plaintiffs devote an entire section of their brief to the irrelevant argument that because "learners" can be paid 95% of the minimum wage, plaintiffs "must be paid for their work." (*Id.* 31-32) The Learners provision of the FLSA cited by plaintiffs applies only to particular *employees* in certain industries. 29 U.S.C. § 214; 29 C.F.R. §§ 520.300, 520.404(f). *Portland Terminal* could not have been clearer on this point: "[The Learners] section … carries no implication that all instructors must either get a permit or pay minimum wages to all learners; the section only relates to learners who are in 'employment.'" 330 U.S. at 151-52. The Learners provision has no bearing on what the legal standard is for determining whether an unpaid intern is an employee. *See also Williams*, 87 F.3d at 1068 (Learners provision "does not broaden the definition of 'employee.'").

showing of "work." Plaintiffs make more than thirty references to an "exception" or a "defense" or a burden on Hearst to disprove their employee status in this case. (*See, e.g.*, Pl. Br. 28 ("Hearst was required to prove that Plaintiffs' work did not provide it with any immediate advantage.")) Even their "Statement of the Issues for Review" asks whether "Hearst could establish its trainee defense" and whether Hearst should have been "require[d] [to] establish that each of the [DOL's]" criteria were met in order to prevail on "its trainee defense." (*Id.* at 3)

Plaintiffs have it backwards. There is no presumption of employee status. It is black letter law that plaintiffs are only employees if they prove they are. *See, e.g.*, *Steelman v. Hirsch*, 473 F.3d 124, 128 (4th Cir. 2007) ("A plaintiff bears the burden of establishing that she is an employee under the FLSA."); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir. 1993). *Portland Terminal* did not create an "exception" to the definition of employee that reverses this burden of proof (nor did it even use the word "exception"); it analyzed whether the trainees in that case were within the scope of the FLSA, a contention that must always be proven by the one making it. That is exactly how *Portland Terminal* has been applied in the only precedent in this circuit. *See Archie*, 997 F. Supp. at 535 (concluding that "*plaintiffs have satisfied* each of the factors *to prove that they were employees* and not trainees" under law) (emphasis added). Plaintiffs' attempt

- 31 -

to reverse the burden of proof is without foundation, which is reason enough to reject their fundamentally flawed standard.

Putting aside the burden of proof, plaintiffs' argument that an "immediate advantage" to Hearst would be dispositive of the fact that they are employees is based on a further misreading of *Portland Terminal*. (Pl. Br. 34 ("*Portland Terminal* did not leave room for employers to benefit *at all* from the relationship and not pay the workers"))[12] Plaintiffs contend that because there was no "immediate advantage" to the railroad in *Portland Terminal* and the trainees there were not employees, then the reverse must also be true; namely, if there is an immediate advantage to Hearst in this case, it automatically means that plaintiffs were employees.[13] But that logic does not wash and there is no language in

_____

[12] Plaintiffs' attempt to shift their burden of proving "immediate advantage" (or lack thereof) coincides with their inability to satisfy that burden. Unable to prove each plaintiff gave Hearst an "immediate advantage," plaintiffs attempt to skirt their own purported requirement by representing (without explanation or support) that "productive work" and "immediate advantage" are synonymous. (Pl. Br. 28) Here again plaintiffs contradict *Portland Terminal*. In that case, the trainees performed "actual" work yet the railroad received no immediate advantage. 330 U.S. at 149, 153. Plaintiffs' description of the immediate advantage factor as "crucial" to the *Portland Terminal* decision is also unsupported. The Supreme Court "[a]ccept[ed] the unchallenged findings that there was no "immediate advantage." *Id.* at 153. In no way did it indicate that "immediate advantage" is crucial, let alone dispositive.

[13] Plaintiffs also misread *Portland Terminal* in stretching the Court's finding of no "immediate advantage" to mean that the railroad obtained no benefit at all. (Pl. Br. 34) The railroad certainly benefited from the training program by securing a pool of qualified workers from which it could draw whenever it was in need, and

- 32 -

*Portland Terminal* to support it. As the District Court put it, although there was no immediate advantage in *Portland Terminal*, "it does not logically follow that . . . the presence of an 'immediate advantage' alone creates an employment relationship." (SPA-6)

However stated, plaintiffs' "one-dimensional" approach is not suited to the task of determining whether an intern is an employee. It takes no account of the educational value of internships, the benefits to interns, or the burdens on host companies associated with having student interns in the workplace. Plaintiffs' effort to avoid focus on the benefits to students who pursue unpaid internships for academic credit, to fulfill a requirement for graduation, to obtain an introduction to a possible career path, or for other reasons, is directly at odds with *Portland Terminal*. Plaintiffs contend that, because the training program in *Portland Terminal* was like a vocational school, an unpaid internship is illegal unless it is the equivalent of vocational schooling. (*See, e.g.*, Pl. Br. 32-33) But *Portland Terminal* contains no language or logic to support this. To the contrary, its holding on the FLSA's scope was neither narrow nor limited to its facts.

---

it trained those workers without having to pay them minimum wage. 330 U.S. at 149-50. Plaintiffs further misstate the test adopted by the District Court to be that any intern who obtains "*some* benefit" from an internship cannot be an employee. (Pl. Br. 27, 38, citing SPA 6-7) Plaintiffs appear to be confusing the court's denial of summary judgment with an affirmative finding of non-employee status.

In this case, of course, we are faced not with railroads but magazines, for which there are no "vocational schools."  The internships at issue – involving journalism, advertising, marketing, photography, fashion, accounting, and other fields – involve office skills for which college is the relevant training ground, not vocational school.  There is no sound basis in law or reason for plaintiffs' argument against the validity of academic credit as an indication of the internships' educational value, or for seeking to limit educational experiences to those that mimic vocational schools.[14]  *See supra* pp.18-20.

Plaintiffs' novel test reflects a fundamental misunderstanding of *Portland Terminal* and the scope and purpose of the FLSA.  It has no basis in law or logic. It should be rejected.

---

[14] Indeed, academic credit and other educational value provided to students are considered by courts and the DOL alike in making employee determinations, regardless of whether the alleged employment situation mirrored a classroom or vocational school experience.  *Kaplan*, 504 F. App'x at 833-34 (considering receipt of academic credit and fact that externship made plaintiffs eligible for degrees); *Demayo*, 918 F. Supp. 2d at 1291-92 (considering educational benefits and whether extern received credit, as well as "hands on training," without qualifying that it must be the type given in a classroom environment); *Laurelbrook*, 642 F.3d at 530-31 (considering general educational value and that the program at issue was accredited); *Blair*, 420 F.3d at 829; *see also, e.g.*, *Archie*, 997 F. Supp. at 533 (considering both general training and training that is similar to that received in vocational school); *see also* A3912-13(¶¶3-4) (DOL consideration of academic credit).  This makes sense.  It would be illogical to require internships to be centered around classroom experiences.  The very purpose of an internship is to get out of the classroom and gain real-word, hands on experience.

**B. The *Glatt* Court's Flawed Test Is Premised Upon A Misreading of *Portland Terminal***

While not as extreme as plaintiffs' one-dimensional view, the *Glatt* test suffers from many of the same flaws. First, the court flatly rejected the primary beneficiary analysis, notwithstanding this Court's clear acknowledgement in *Velez* that it is the correct test in cases involving unpaid students and trainees, and the great weight of authority adopting that standard in other circuits. *Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. 516, 531-32 (S.D.N.Y. 2013). Second, the *Glatt* court paid no heed to this Court's finding that expectation of compensation is a "significant" factor in determining an employment relationship when it found that factor "adds little" to the analysis. *See id*. at 534. Third, its repeated reference to *Portland Terminal* as establishing an "exception" to employee status suggests a presumption of employee status unless the "exception" is proven, effectively shifting plaintiffs' burden of proof to defendants. *See id*. at 530-32, 534, 536. Finally, the court limited its analysis to the six factors on the DOL's Fact Sheet #71, resulting in a straitened totality of the circumstances test, if it can be called that at all (the DOL says it cannot, *see infra* p. 41).

The *Glatt* court's test is based on a fundamental misreading of *Portland Terminal*. Its constricted view of what *Portland Terminal* actually held led it to depart from established law and colors its entire analysis. The *Glatt* court relied heavily on its "expansive" view of the scope of the FLSA, citing *United States v.*

- 35 -

*Rosenwasser*, 323 U.S. 360, 362 (1945), a case involving garment factory workers who were paid by the piece. *Glatt*, 293 F.R.D. at 532. But it failed to recognize that *Portland Terminal* placed limitations on that scope two years later, and did so specifically with respect to unpaid students and trainees. The court repeatedly states that *Portland Terminal* created a narrow "exception" to the FLSA, a view that constrained its analysis and prompted its warning that "[c]ourts should be cautious in expanding the 'trainee' exception." *Id.* But there is no such "trainee exception." *See supra* pp. 30-32. This is not merely semantics – *Glatt*'s reliance on law regarding the treatment of *employees* – persons unquestionably within the FLSA's scope – to frame its analysis of whether an intern is an employee in the first place demonstrates the court's view that they are and proves its error.[15]

Yet even the *Glatt* court's narrow view of *Portland Terminal* does not explain why it ignored the clear dictates of that case and its progeny in this circuit, declaring that the expectation of compensation factor "adds little" to its test. *Compare Glatt*, 293 F.R.D. at 534; Pl. Br. 55 (according it "little weight") *to Portland Terminal*, 330 U.S. at 152 (excepting from FLSA's scope those who

---

[15] *Glatt*, 293 F.R.D. at 532 (quoting *Rosenwasser*, 323 U.S. at 362, a case that determined that the manner in which *employees* are paid cannot exclude them from the Act); *see also id.* at 534 (citing *Alamo* analysis regarding *employees'* ability to waive protections of the Act, and similar language from *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 710 (1945), about *employees'* ability to waive liquidated damages under the Act); *id.* at 533 (citing FLSA provision regarding "learners" that applies to certain *employed* persons).

work without expectation of compensation); *Velez*, 693 F.3d at 330 (expectation of compensation is "significant" factor in finding employment relationship); *Archie*, 997 F. Supp. at 533 (expectation of compensation is an "important element[]" in determining employment status). The *Glatt* court's only claimed support for this conclusion is, again, irrelevant law regarding those already deemed *employees*, which has no bearing on the importance of expectation of compensation for determining whether someone is an employee. *See supra* n.15. But even the law it cites, *Alamo*, could not have been clearer that the Act covers only those who work in expectation of compensation. *See supra* pp. 24-25. *Glatt*'s marginalization of this "significant" factor is sufficient basis to reject its test.[16]

The *Glatt* court's preference for its flawed test is not based on law or experience, but its own unsupported criticism of the consensus standard. *Glatt* summarily disparages the primary beneficiary standard as unpredictable, subjective and unmanageable. *Glatt*, 293 F.R.D. at 532. These concerns are negated by the widespread application of the standard by numerous courts without incident. *See* Section I.A, *supra*. They also do not stand up to scrutiny. *Glatt* contends that a primary beneficiary analysis is unpredictable and unmanageable because "an employer could never know in advance whether it would be required to pay its

---

[16] The *Glatt* court also marginalized other considerations that would factor into a proper totality of the circumstances analysis. *See Glatt*, 293 F.R.D. at 534 (refusing to consider certain training, education and benefits to interns).

- 37 -

interns." *Glatt*, 293 F.R.D. at 532. This is not a valid objection. The same could be said about any of the multi-factored FLSA tests commonly applied by courts – employment determinations routinely involve complex, "fact-intensive" tests. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 76 n.14 (2d Cir. 2003). For instance, there are seven factors that are particularly relevant for determining whether a household member is employed as a domestic service worker, including "the flow of benefits from the relationship" and "the history and nature of the parties' relationship aside from the domestic labor." *Velez*, 693 F.3d at 330. The latter factor requires consideration of the parties' interactions, such as whether the purported employer was taking plaintiff to movies and other entertainment and including her in holiday celebrations. *Id.* The seven factors are not to be applied rigidly and the list is not all-inclusive; any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition. *Id.* at 330-31.[17] The primary beneficiary test is no more unmanageable or unpredictable than this or any other employment test.

*Glatt*'s claim of subjectivity is equally without merit. The primary beneficiary standard does not turn on plaintiffs' subjective view of their

---

[17] Other employment tests are similarly fact-intensive and complex. *See, e.g.*, *Zheng*, 355 F.3d at 76 (joint employer); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-60 (2d Cir. 1988) (independent contractor); *Myers*, 624 F.3d at 548-49 (FLSA exemptions).

experience.  It turns on an objective assessment of the primary beneficiary and

economic reality of the relationship in light of the totality of the circumstances.

The fact that plaintiff and defendant may have different views of the facts, and that

their testimony on those views may be used as evidence, is no different from any

disputed employment context and does not affect the primary beneficiary

analysis.[18]  Plaintiffs admit as much when they acknowledge that this Court's

domestic employee test in *Velez* is "objective" notwithstanding the fact that it

included a primary beneficiary analysis.  (Pl. Br. 36)  There is no "subjectivity"

that justifies rejection of that analysis.

### C. The DOL's Rigid Checklist is Inconsistent With A Totality Of The Circumstances Approach, Inconsistent With Its Own Practice, And Has Already Been Rejected By Two Circuits

Without a single case supporting their "productive work" theory, plaintiffs

urge the Court to "adopt the DOL's six criteria for unpaid internships" set forth in

DOL Fact Sheet #71 in an all-or-nothing approach requiring defendants to

---

[18] The *Glatt* court (and plaintiffs) referred to a statement made at oral argument in that case, where defense counsel said that under the primary beneficiary analysis, the same internship position might be legal for one intern and illegal for another.  293 F.R.D. at 532; Pl. Br. 36.  The *Glatt* court cited this as proof of unpredictability, subjectivity and unmanageability of the primary beneficiary analysis.  Those concerns are unfounded.  Counsel's impromptu answer as to how the test might apply in a hypothetical circumstance is not proof of anything.  What is more telling is how the courts in *Laurelbrook* and *Archie* applied a primary beneficiary analysis to a group of plaintiffs, demonstrating that, in the right circumstances, the primary beneficiary standard can be applied to multiple individuals.

establish every factor in their favor to prevail. (*Id.* at 37-39) This is just another expression of their one-dimensional test, as it would enable them to establish liability by satisfying any one of the six DOL factors, including "immediate advantage" to Hearst. The DOL advocates for this test as well. (DOL Amicus Br. 12-13)

The DOL took the same position in the Sixth Circuit in *Laurelbrook* and in the Tenth Circuit in *Parker Fire*. Both courts rejected it because the DOL's single-factor-dispositive test is inconsistent with *Portland Terminal* and totality of the circumstances analyses used across employer-employee determinations. *Laurelbrook*, 642 F.3d at 525 (DOL's test "a poor method for determining employee status," "overly rigid and inconsistent with a totality-of-the-circumstances approach," and "inconsistent with [*Portland Terminal*] itself"); *Parker Fire*, 992 F.2d at 1026-27 (DOL's "all or nothing" approach unsupported by *Portland Terminal* and "unreasonable"). The DOL admits that its test "stands in stark contrast" with a totality of the circumstances test. (DOL Amicus Br. 8-9) This Court should reject the DOL's approach just as the Sixth and Tenth Circuits did.[19] As those courts explained, the DOL single-factor-dispositive standard is

---

[19] The DOL and plaintiffs suggest that two circuits have given deference to their requested single-factor-dispositive test. (DOL Amicus Br. 21) That is not true. In *Atkins v. General Motors Corp.*, 701 F.2d 1124 (5th Cir. 1983), the Fifth Circuit cited all six factors and referred to its decision in *Donovan v. American Airlines* in which it adopted a balance of the benefits approach. Similarly, in

inconsistent with *Portland Terminal* and a totality of the circumstances test. If made law, it would result in inconsistency across FLSA determinations and thwart the Act's purpose of increasing opportunities. *Cf. Freeman v. NBC, Inc.*, 80 F.3d 78, 84 (2d Cir. 1996) (declining to apply a DOL Interpretation that would contravene existing law and "produce a result incongruous with the purposes of the FLSA.").

The DOL's single-factor approach does not warrant deference also because it is nothing more than a purported (and incorrect) distillation of the *Portland Terminal* decision. (DOL Amicus Br. 12, 14 ("Department's test is . . . [an] application of . . . *Portland Terminal*")) Unlike this Court, "an agency has no special competence or role in interpreting a judicial decision." *New York v. Shalala*, 119 F.3d 175, 180 (2d Cir. 2000) (refusing to apply agency's interpretation of judicial decision); *accord Inst. for Scientific Info., Inc. v. U.S. Postal Serv.*, 555 F.2d 128, 132 (2d Cir. 1978).

Finally – but significantly – neither the DOL's own opinions nor its senior people who applied the DOL factors have followed the checklist approach it

---

*Kaplan*, the Eleventh Circuit first implicitly balanced the benefits to reach its result and then noted that its "conclusion is *also* supported by guidance from the [DOL]." *Kaplan*, 504 F. App'x at 834 (emphasis added). The Court did not hold that if any factor was not met, plaintiff would have been an employee. Neither the DOL nor plaintiffs have cited a case in which the DOL's single factor test has been adopted.

advocates here.[20]  At best, the DOL is inconsistent, which is another reason why its judgment should not be adopted.  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

Rather than a rigid checklist, the DOL factors can serve as guidance in assessing the totality of the circumstances.  This is the appropriate deference to be accorded to the factors, as was done by the District Court and various other courts. (SPA-6)  For example, the *Archie* court observed that the DOL factors "are not exhaustive and are intended to be consistent with" *Portland Terminal*, noting that both eschew reliance on any single factor and instead require "consideration of all the circumstances."  997 F. Supp. at 532; *see also, e.g.*, *Laurelbrook*, 642 F.3d at 529 (factors can guide the inquiry); *Parker Fire*, 992 F.2d at 1027 (factors are relevant but not conclusive).  In short, the DOL factors may inform the totality of the circumstances test, but not supplant it.

---

[20] *See* A3912-13(¶¶3-4) (Former DOL compliance officer charged with enforcement: "In my [31 year] tenure . . . the earning of post secondary school academic credit was the key factor in determining that an intern was not an employee of the host business;" "[i]f the educational institution deemed the internship worthy of academic credit, it was clear to me that the student intern was the primary beneficiary of the relationship."); *see also Parker Fire*, 992 F.2d at 1027 (finding that the DOL itself has not rigidly applied each one of its factors; quoting Op. Wage-Hour Adm'r No. 638 (July 18, 1967): "The Court has made it clear that there is no single rule or test for determining whether an individual is an employee, but that the total situation controls.  The Court has indicated a number of factors which help to determine whether an employment relationship exists.").

**D.**  **Plaintiffs' Alternative Legal Standards Would Produce Perverse Incentives And Lead To Fewer School-Sanctioned Internship Programs**

For all of the reasons set forth in Section I.C, the primary beneficiary analysis is the superior legal standard for assessing the employment status of student interns.  The alternatives advanced here would, without question, drastically reduce the educational and, ultimately, employment opportunities for students in this country.

Plaintiffs' "immediate advantage" paradigm is nothing less than a presumption of employee status.  Any "productive work," however insignificant, would automatically transform a student intern into an employee.  This can only be viewed as a strict liability standard for host companies that open their doors to unskilled students who seek workplace exposure and experience through a school-sanctioned internship.

Under Plaintiffs' view, the only way a host company realistically could avoid liability is to have a meaningless internship program where students did nothing of substance.  That would mean students could only observe operations but never have the opportunity to "do" anything.  If a host did give students a chance to engage in the workplace, plaintiffs' regime would seem to encourage failure to ensure that the work was of no "immediate advantage" to the company.  Putting aside the fact that no student would want to spend time participating in such a

worthless exercise, a program framed by such perverse legal incentives would actually inhibit a young person's academic and professional growth. Simply put, the application of plaintiffs' test would lead to an unacceptable level of risk for a company to host student interns, and a level of absurdity to avoid that risk. If this does not lead to the end of unpaid student internships in the private sector altogether, it would likely make them pointless, robbing students of meaningful educational opportunities. As a policy matter, employing a standard that does not focus on benefits – particularly the educational benefits – to students runs counter to our society's commitment to the advancement of our nation's youth. It misses the entire point of student internships, which is to give a young adult lacking in skills but brimming with interest a no-risk pre-graduation opportunity to acquire knowledge and experience in an industry of their choosing.

For these reasons, whatever is said about non-student workplace trainees, school-sanctioned student internships should be treated differently. The receipt of academic credit for an internship has for decades been the best evidence that a particular internship is educationally valuable, reflecting the reasoned judgment of higher education institutions that are best situated to make such a determination.

**III.  THE COURT SHOULD NOT ACCEPT PLAINTIFFS' INVITATION TO GO BEYOND THE CONTROLLING LEGAL STANDARD ON THIS INTERLOCUTORY APPEAL; THERE ARE NO GROUNDS TO REVIEW THE DISTRICT COURT'S CLASS CERTIFICATION OR SUMMARY JUDGMENT FINDINGS**

The District Court decision should be affirmed if the Court concludes that it applied the correct standard for determining whether an unpaid intern is an employee.[21]  If the Court adopts a different standard, it should remand the case. There is no basis to review the District Court's findings on class certification and summary judgment.

### A. Class Certification

Fed. R. Civ. P. 23(f) governs interlocutory review of class certification decisions and requires that the petition be filed with the circuit court within 14 days of the district court's order.  Plaintiffs chose not to file a Rule 23(f) petition. They petitioned the Court only through 28 U.S.C. § 1292(b) two months after the District Court's order denying class certification.  (A5616-5661)  The law is clear that the class certification decision is not properly before this Court through Section 1292(b) even when the district court has certified that issue.[22]   The Seventh Circuit decided this very question in *Richardson Electronics, Ltd. v.*

---

[21] Plaintiffs make no meaningful argument that the District Court's class certification or summary judgment rulings were incorrect under that standard.

[22] The issues this Court reviews through a Section 1292(b) appeal are not controlled by the issues the district court specifies when certifying an order.  *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996).

*Panache Broadcasting*, 202 F.3d 957, 959 (7th Cir. 2000) (holding that plaintiffs may not use Section 1292(b) "to circumvent the [14]-day limitation in Rule 23(f)," even where the district court certifies class certification question); *see also Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996) (citing *Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 863 (3d Cir. 1977) ("[T]he district court's certification of the class in a class action suit is an inappropriate order for interlocutory appeal [through Section 1292(b)].")).  The District Court's class certification order should not be reviewed on this appeal.

Indeed, plaintiffs limited the request for relief in their Section 1292(b) petition with respect to class certification to "remand . . . for further proceedings," and they argued for this Court's review "[b]ecause a revised legal standard would likely change the district court's analysis of Plaintiffs' motion for class certification." (A5621, 5636; *see also* Pl. Br. 2, 9, 56, 57, 63 seeking that the Rule 23 decision be "reversed and reconsidered," "reversed and remanded," "vacated and reconsidered" and "remanded")  The Rule 23 decision is not properly subject to this Court's review through Section 1292(b). [23]

---

[23] In granting the petition, this Court did not specify the issue to be reviewed.  In any event, the Court "may decline at any time to decide [an] issue" accepted for review. *Koehler*, 101 F.3d at 866-67 (court accepted Section 1292(b) petition but determined after reviewing the merits briefing that permission to appeal should be denied).

Further, plaintiffs argue for reversal because the District Court "misapplied Rule 23 jurisprudence." (Pl. Br. 9) This argument does not raise any issue of "controlling law" covered by Section 1292(b). Moreover, the District Court's application of the Rule 23 requirements to the facts would be subject to review for abuse of discretion only, it is not reviewed *de novo*. *Myers*, 624 F.3d at 547. As this Court has stated, "§ 1292(b) was not meant to substitute an appellate court's judgment for that of the trial court." *Koehler*, 101 F.3d at 866.

### B. Summary Judgment

Section 1292(b) allows for interlocutory appellate review of controlling questions of law. It is not a proper vehicle to review a denial of summary judgment. "The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004); *La. Patients' Comp. Fund Oversight Bd. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 585, 588 (5th Cir. 2005) (Section 1292(b) appellate review does not cover "whether [a party] presented sufficient evidence to raise a genuine issue of material fact to preclude summary judgment."). Significantly, in their petition plaintiffs asked only whether the District Court's legal standard was error, not whether undisputed material facts permit summary judgment under that or another standard. (A5623)

- 47 -

If the Court sets a new standard, it should remand for fresh briefing with respect to that standard. It would be unfair and unjust to proceed with a summary judgment determination on a new standard – particularly if it reverses the burden of proof as plaintiffs ask – without affording Hearst the opportunity to fully brief the issues in light of the particulars of any new standard this Court might adopt. This is especially so because plaintiffs devote fourteen pages of their brief to scattershot summary judgment arguments that have no relation to any standard accepted by any court. (Pl. Br. 43-56) These arguments would require the Court to comb the record to find facts pertinent to the legal standard to make a summary judgment determination for each plaintiff. This is not appropriate for appellate review. *See Zheng*, 355 F.3d at 77 n.14 ("[C]ourts of appeals [are] not to engage in independent fact-finding after concluding that a district court has applied the wrong factors in classifying an individual or an entity under the FLSA. . . . [W]ith respect to the fact-intensive classifications required by the FLSA, courts of appeals should avoid even straightforward factual determinations."); *McFarlin*, 381 F.3d at 1258 ("The term 'question of law' [in Section 1292(b)] does not mean . . . any question the decision of which requires rooting through the record in search of the facts or of genuine issues of fact.") (internal citation omitted).

**IV.   IF THIS COURT DOES REVIEW THE DISTRICT COURT'S ORDER BEYOND THE CONTROLLING LEGAL STANDARD, ITS DENIALS OF SUMMARY JUDGMENT AND CLASS CERTIFICATION SHOULD BE AFFIRMED**

### A. Class Certification

The varied internships between and within each of Hearst's 19 magazines as well as its corporate magazine departments makes this case unsuitable for class treatment regardless of the legal standard for determining whether any one intern is an employee.  Even if the DOL factors are rigidly adopted, not a single factor supports class treatment.  Two factors – expectation of compensation and entitlement to a job – indisputably go against plaintiffs because they disprove liability.  As to the other four, the District Court found they are not capable of class treatment: "[T]he record shows that there is no uniform policy among the magazines with respect to the contents of the internship, including interns' duties, their training, and supervision, such that the analysis of four out of six DOL factors would have to be individualized."  (SPA-11)  Thus, Judge Baer continued, "[t]o make liability determinations, the Court would have to evaluate all of such individualized evidence, in addition to individualized testimony about the level of supervision and respective benefits, against the six factors suggested by the DOL."[24]  (SPA-12)

---

[24] Plaintiffs request that instead of duties, the Court consider the "nature" of the interns' work.  By "nature" plaintiffs mean "immediate advantage."  (Pl. Br. 9,

This is precisely the type of fact pattern in which commonality is non-existent. *See, e.g.*, *Myers v. Hertz Corp.*, No. 02 Civ. 4325, 2007 WL 2126264, at *4 (E.D.N.Y. July 24, 2007) (no commonality when the conduct alleged to be illegal would require a fact-intensive inquiry into each class member).[25] It is "the opposite of a uniform employment practice that would provide the commonality needed for a class action." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2554 (2011).

There is no basis to revisit the District Court's findings, which would be subject to review for abuse of discretion. *See Myers*, 624 F.3d at 547. Plaintiffs do not even suggest any such abuse. Unable to refute the District Court's holding, plaintiffs misrepresent it. They claim that the District Court "presumed that the evidence could not be used to determine the merits because it came from multiple sources . . . rather than consisting of an Official Code of Conduct, a standardized

---

57) But "immediate advantage" alone does not prove liability, nor have plaintiffs presented common, classwide proof of "immediate advantage."

[25] Further counseling against class certification in this case, as the District Court concluded, is the inability to determine damages without individually evaluating each class member. (SPA-12) With no genuinely representative evidence possible for the hours worked by class members, "separate hearings loom[] even if the [Court] bifurcate[s] the proceedings . . . . Bifurcation would not eliminate variance in damages across class members." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013) (affirming denial of class certification); *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (predominance not satisfied because damages not capable of measurement on a classwide basis).

company-wide description of responsibilities, or a comparable corporate-level document." (Pl. Br. 61) (internal quotation marks omitted) However, the District Court made no such distinction. Rather, it made the point that the individualized, varied internships in this case cannot be judged based on common evidence, because the evidence submitted simply does not have the requisite commonality necessary to decide issues relevant to liability. Moreover, in their attempt to counter the District Court's holding, plaintiffs conspicuously rely on cases that did *not* involve Rule 23 class certification. (*See id*. at 61, citing *Reich v. S. New England Telecomms. Corp.*, 892 F. Supp. 389, 402-03 (D. Conn 1995), and *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1276-80 (11th Cir. 2008)) Those cases are irrelevant.

Plaintiffs do not prove error, much less establish that they are entitled to a certified class. It is plaintiffs' burden to satisfy the Rule 23 elements by a preponderance of the evidence. *Myers*, 624 F.3d at 547. Yet they do not specify a single purported common question for their burden on commonality, nor do they provide the requisite "common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551. Their support in favor of class certification consists, in its entirety, of two contentions, neither of which would drive the resolution of this case. First, plaintiffs claim that "there is no evidence that interns received more than *de minimis* academic-type training." (Pl. Br. 58, 59-60)

However, there is no common proof that the internships uniformly did not provide "academic-type training." Second, plaintiffs argue that interns "performed productive work." (*Id.* at 57, 60) However, "productive work" is not proof of employment. *See supra* p. 30. Accordingly, plaintiffs' arguments fail because they do not raise a "common contention," let alone a common contention that "will resolve an issue that is central to the validity of [their claim] in one stroke." *Dukes*, 131 S. Ct. at 2551. For the same reasons, they have also failed to satisfy the "even more demanding" requirement that common questions and common answers predominate over individual ones. *See Comcast*, 133 S. Ct. 1432.[26] The denial of class certification should be affirmed.

**B.    Summary Judgment**

Even if this Court deems it appropriate to review the District Court's denial of summary judgment, that decision should be affirmed. Plaintiffs' entire argument in favor of summary judgment is premised upon their erroneous shifting of the burden of proof to Hearst. As set forth above, it is each individual plaintiff's burden to establish that they are employees and that there are no disputed issues of material fact on that issue. Under any standard, plaintiffs fail to meet that burden.

---

[26] Trying to wedge the facts into homogeneity and into favorable law, plaintiffs repeatedly submit that Hearst has an internship "program." (*E.g.*, Pl. Br. 57-59) But there is no single Hearst internship program. (*See* SPA-11)

The District Court found the existence of a genuine dispute and material issues of fact as to each plaintiff precluding summary judgment. The court rejected summary judgment upon application of Plaintiffs' proposed "one-dimensional" "immediate advantage test" and found that, even under an analysis pursuant to the DOL's six factors, summary judgment was not warranted since a "jury could return a verdict in Hearst's favor." Specifically, all plaintiffs understood their internships were unpaid and Hearst was clear with all plaintiffs that "there was little likelihood, and certainly no guarantee of a job at the end of their internship[s]." (SPA-3, 7) As to the remaining four factors, Judge Baer found that each plaintiff received "*some* educational training, *some* benefit to individual interns, *some* supervision, and *some* impediment to Hearst's regular operations." (*Id*. at 7) This evidence, when viewed in the light most favorable to Hearst, raised a genuine dispute on material issues of fact on each and every DOL factor. (*Id*.)

Nothing has changed on appeal. Plaintiffs do not dispute that they understood they were not entitled to wages. Plaintiffs do not dispute that they understood they were not entitled to a job. And each plaintiff was required to receive academic credit from their college or university.

Plaintiffs' claim that there are undisputed material facts on the remaining DOL factors is countered by the District Court's findings. Moreover, plaintiffs'

arguments devolve into generalized assertions that do not carry their burden. For example, plaintiffs contend there are no disputed material facts on plaintiff Skorka's "educational training" because she didn't attend any formalized classroom training, but ignore that she enjoyed a wealth of shadow opportunities with her supervisors that she herself described as "major" learning experiences.[27] Plaintiffs also make broad assertions that they "did not work under close supervision" (Pl. Br. 52), but ignore testimony such as that from plaintiff Spencer directly to the contrary.[28] As another example, some of the plaintiffs contend they performed tasks of paid entry-level assistants, but fail to address the disputed facts that such tasks were designed for learning experiences.[29]

---

[27] *See, e.g.*, A5505-5508(¶¶D107-D114, D121-122, 126, 129) (citing A4256(100:18-101:2); A4258(110:14-16; 111:16-19; 112:12-14); A4259(115:3-9; 117:14-23); A4260(118:4-6; 119:4-121:2); A4261(122:8-21; 123:21-124:14; 125:9-19); A4262(127:21-23; 128:15-20; 129:15-18); A4264(135:11-20; 136:24-137:8); A4269(174:20-175:15); A4272(188:12-15; 189:2-7); A4273(190:3-6; 191:18-23; 192:8-12); A4274(194:9-17; 196:5-8; 196:16-18).

[28] *See, e.g.*, A5518-19(¶D161), A5522-23(¶¶D177- D178) (collectively, citing A4290(126:23-128:4), A4291(131:15-20), A4292(134:3-135:14), A4294(142:20-144:6), A4296(154:2-7), A4298(164:3-19; 165:11-18), A4300-4301(173:19-174:9; 174:24-176:5), A4505, A4524).

[29] *See, e.g.*, A5479-80(¶¶D11-D13); A5485-87(¶¶D30-D35); A5494-95(¶D66); A5507(¶D114); A5513-16(¶¶D143-D150); A5525-26(¶¶D188-191); A5530-32(¶¶D204-209; D211); A5537-43(¶¶D233-234; D237-244); A5545(¶D253); A5548-49(¶¶D268-273) (citing, collectively, A809-811(234:16-236:9), A2430-2433(¶¶ 3-9), A3645-3646(¶¶5-7), A4098-4099(173:22-174:3; 174:14-175:6), A4102(204:13-205:15), A4103(206:2-24), A4258(112:12-14), A4259(115:3-9), A4336-4338(146:19-155:18), A4541, A5272-5273(¶¶10, 11,

Further revealing plaintiffs' inability to meet their burden, they brush aside

core disputes as "insufficient" to raise an issue of fact.  For example, in the face of

the classroom internship trainings attended by plaintiffs Leszuk, Spencer and

Wheels, plaintiffs claim they were not "vocational" or "substantial."  (Pl. Br. 48)

Plaintiffs also ignore facts establishing benefits they received, such as learning the

inner workings of major magazine departments,[30] enhancing academic preparation

by putting school learning into a real-world context,[31] and providing one plaintiff

with "an experience full of opportunities to observe, improve, learn and

participate," as she herself put it.[32]  Not to mention that some plaintiffs fulfilled

---

13), A5277-5279(¶¶6-10), A5301(¶9), A5304(¶18), A5309(¶7), A5314(¶¶16, 17), A5315(¶19), A5320(¶¶ 9-11), A5333(¶6), A5335(¶13), A5340-5341(¶13), A5342(¶22), A5348-5349(¶¶12, 13), A5350(¶17), A5351(¶21)); *see also, generally* A3316-17(¶31 (response)); A3317-18(¶¶33-34 (responses)).

[30] *See, e.g.*, A5505-08(¶¶D107-115, D121) (citing A4256(100:18-101:2); A4258(110:14-16; 111:16-19; 112:12-14); A4259(115:3-9; 117:14-23); A4260(118:4-6; 119:4-121:2); A4261(122:8-21; 123:21-124:14; 125:9-19); A4262(127:21-23; 128:15-20; 129:15-18); A4264(135:11-20; 136:24-137:8); A4269(174:20-175:15); A4272(188:12-15; 189:2-7); A4273(190:3-6; 191:18-23; 192:8-12);  A4274(194:9-17; 196:5-8; 196:16-18)); A5490(¶D47) (citing A4133 (187:13-17) ; A3398(¶¶D51-53) (citing A4129 (167:12-168:9); A4135(198:20-24; 200:10-21; 201: 4-14); A4137(206:9-13)); A5479-80(¶¶D11-13) (citing A4098-4099(173:22-174:3; 174:14-175:6); A4102(204:13-205:15); A4103(206:2-24); A5543-44(¶¶D249) (citing A4380(168:7-9); A4381(171:8-10); A4389(206:6-24); A4390(213:14-25); A4391(215:20-22); A4392(219:23-25).

[31] *See, e.g.*, A5509-10(¶D126) (citing A4261(125:9-19); A3869(¶¶4, 5)).

[32] A5524(¶D181) (citing A4517).

college graduation requirements through their internships.[33]  One plaintiff's school even forbid her from being paid for the internship, presumably because she was interning for credit, like it was a class, as opposed to interning for payment.  (*See* A4157-58(113:18-114:3))

Plaintiffs' credibility issues also preclude summary judgment.  For example, in job application materials generated mere weeks before his deposition, plaintiff Wagster stated that his Esquire internship gave him the opportunity to gain skills in sales and developed his abilities to work in a team setting, self-direct and multitask.  However, at his deposition he testified that those statements were false, that his internship was "worthless" and that he did not learn anything.[34]  After class representative plaintiff Wang finished her internship she reflected that it had "provided [her] unrivaled skills for working in fashion" and was her "most valuable work experience"[35] yet she sued Hearst claiming the contrary. Plaintiff Mancini knew before starting her internship that academic credit was required and

---

[33] A5501-02(¶¶D94) (citing A4253(88:10-20); A5516-17(¶¶ D153-D154) (citing A4287(106:20-24); A4289(120:19-25); A4304(188:18-21); A5476-77(¶¶D3-5) (citing A4093(134:10-17); A4096(156:3-8); A4097(158:10-14; 158:17-159:3); A5291; A5294.

[34] *Compare* A5529-26(¶D202) (citing A4332(113:7-11); A4335-4336(145:23-146:2); *with* A5532(¶D211) (citing A4336-4338(146:19-155:18); A4541).

[35] A5536-37(¶¶D228-229) (citing A2711, A3639).

asked her college advisor to falsely represent that she was receiving credit (the advisor refused).[36]

If this Court determines that review of the District Court's summary judgment ruling is appropriate, it should affirm. Under any standard, the record reflects genuine issues of material fact as to each plaintiff.

## CONCLUSION

For the reasons discussed above, the District Court's adherence to the primary beneficiary standard to determine whether unpaid students in school-sanctioned internships are employees under the FLSA and NYLL should be affirmed.

Dated: June 27, 2014                    Respectfully submitted,


                                        s/ Jonathan R. Donnellan
                                        Jonathan R. Donnellan
                                        Kristina E. Findikyan
                                        Courtenay O'Connor
                                        Hearst Corporation
                                        300 West 57th Street
                                        New York, New York 10019
                                        (212) 841-7000

                                        *Counsel for Defendant-Appellee*
                                        *The Hearst Corporation*

---

[36] A5492-94(¶¶D63-64) (citing A4121(129:25-130:19), A4122(132:16-133:4), A4472-4474.

- 57 -

## **CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B) because this brief contains 13,940 words, excluding the parts

of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This count is from the

word-count function of Microsoft Word.

2.      This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because this brief has been prepared in a proportionally spaced typeface using

Microsoft Word 2010 in 14-point Times New Roman font.


Dated:  June 27, 2014           <u>s/ Jonathan R. Donnellan</u>

                                       Jonathan R. Donnellan
                                       HEARST CORPORATION
                                       300 West 57th Street
                                       New York, New York 10019
                                       Phone:  (212) 649-2020
                                       jdonnellan@hearst.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 27th day of June, 2014, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

s/ Jonathan R. Donnellan

Jonathan R. Donnellan
HEARST CORPORATION
300 West 57th Street
New York, New York 10019
Phone:  (212) 649-2020
jdonnellan@hearst.com